**In re William David MILLSAPS et ux., Debtors.**

**William David MILLSAPS et ux., Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 86–00487–BKC–6C7. Adv. No. 86–0154.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Nov. 4, 1991.

---

Hildy S. Stern, Trial Atty. Tax Div., U.S. Dept. of Justice, Washington, D.C.

Steven R. Bechtel, Mateer, Harbert & Bates, P.A., Orlando, Fla., for Earl K. Wood and Ford S. Hausman.

Eugene S. Legette, Orlando, Fla., for Paul Roper and Martha O. Haynie.

Andrea A. Ruff, Trustee, Orlando, Fla.

## DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND ON MOTION FOR ABSTENTION

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

This adversary proceeding came on for consideration of the motion for partial summary judgment filed by plaintiffs, William and Anna Jean Millsaps ("Millsaps") (Document No. 81); the cross motion for summary judgment filed by the defendant, United States of America ("Internal Revenue Service" or "Service") (Document No. 97); the motion for abstention filed by the Service (Document No. 95); and the Millsaps' response (Document No. 105).

In this proceeding, the Millsaps make:

1. A request for a declaratory judgment that their federal income tax liabilities for the years 1979 through 1984 have been discharged.

2. A request for a declaratory judgment that the action taken by the Internal Revenue Service to enforce the liens securing tax obligations for the years 1979 through 1984 violated the automatic stay or Section 524(a)(2) of the Bankruptcy Code.

3. A request for a declaratory judgment that the levy, seizure, and sale of the debtors' home located at 528 Morocco Avenue, Orlando, Florida, was illegal and invalid.

4. A request that the court determine the amount owed for the tax year 1982.

In its cross motion for summary judgment, the Service requests that the court declare the dischargeability issues relating to the tax liabilities for the years 1979 through 1984; declare that the tax liabilities for the years 1979 through 1984 were validly assessed; declare that notice and demand were properly effectuated; and declare that the sale of the plaintiffs' residence did not violate the automatic stay or Section 524(a)(2) of the Bankruptcy Code. Alternatively, the Service asserts that, under the facts of this proceeding, this court does not have subject matter jurisdiction to review the levy, seizure, and sale of the plaintiffs' residence.

In addition, in its separate motion for abstention, the Service requests that the court abstain from determining all issues raised by the plaintiffs' fourth amended complaint except the dischargeability of the income tax liabilities for the years 1979 through 1984.

## UNDISPUTED MATERIAL FACTS

The undisputed facts of this proceeding set forth by the parties in the record on the pending motions are as follows:

By early 1986, the Millsaps and the Service for some considerable time had been engaged in a dispute over the Millsaps' federal income tax liabilities for 1979 through 1984. With enforcement action by the Service then imminent, on March 5, 1986, the Millsaps filed suit in the United States District Court for the Middle District of Florida (Case No. 86–227–CIV–ORL) seeking injunctive relief to prevent the Service from selling their residence located at 528 Morocco Avenue, Orlando, Florida. (On April 2, 1987, the district court dismissed that action for lack of subject matter jurisdiction.)

A week later, on March 12, 1986, the Millsaps then filed in this court their joint petition under Chapter 7 of the Bankruptcy Code. The clerk notified creditors that there appeared to be no assets in the estate for distribution and that no claims bar date had been set. The docket reflects that, to this date, there has been no claims bar date established. The Service has never filed a proof of claim. In this bankruptcy case, the debtors claimed their home at 528 Morocco Avenue, Orlando, Florida, as exempt from administration under the Florida constitutional homestead exemption. There were no objections to this claim of exemption. The court entered the debtors' discharge on September 15, 1986.

On July 22, 1986, the Millsaps filed the original complaint initiating this adversary proceeding. The only relief requested in the first complaint was a determination of the dischargeability of the Millsaps' tax

obligations for the years 1979 through 1984. Later the Millsaps filed the first amendment to the complaint to identify correctly the United States of America as the defendant.

On January 21, 1987, the Service sold the plaintiffs' Morocco Avenue home to enforce claimed perfected tax liens securing the debtors' personal income tax liabilities for 1979, 1980, and 1981. Although the Service had filed notices of liens relating to the tax years 1979 through 1984, the Service applied the proceeds from the sale of the home only to the unpaid federal income tax liabilities for the years 1979 through 1981 because there were not sufficient funds to cover the later years.

Also on January 21, 1987, the Millsaps filed a civil action in the Circuit Court for Orange County, Florida (Case No. C.I. 87–413), in connection with the Service's collection efforts. The Service removed that case to the United States District Court for the Middle District of Florida (Case No. 87–104–CIV–ORL–18). On March 16, 1987, the district court dismissed this case with prejudice for failure to allege facts upon which relief could be granted or upon which the court could take jurisdiction.

On September 1, 1987, the Millsaps filed their second amended complaint in this adversary proceeding. In addition to requesting a declaration of the dischargeability of their personal income tax liabilities for the years 1979 through 1984, the Millsaps requested that the court determine the amount of their tax liability for the 1982 tax year.

On November 13, 1987, the Millsaps filed a third amended complaint in this adversary proceeding. In addition to the relief requested previously, the Millsaps requested a declaration that the alleged claim of the Service was unenforceable by virtue of the automatic stay of Section 362 or the permanent injunction of Section 524(a)(2) of the Bankruptcy Code.

On December 30, 1988, almost two years after the sale of the Millsaps' Morocco Avenue home by the Service and well after the

dismissal of both civil actions by the district court, the Millsaps filed a fourth amended complaint in this adversary proceeding. In addition to the relief previously requested, the Millsaps requested for the first time that this court declare invalid and improper the assessment, lien, levy, seizure, and sale procedure followed by the Service with regard to the taxes for the years 1979 through 1984 and the sale of the home.

## DISCUSSION

The court makes these conclusions of law based upon the undisputed facts.

1. *Dischargeability of Tax Liabilities for the Tax Years 1979 through 1984.*

■ The debtors' discharge, entered on September 15, 1986, operates to discharge the Millsaps from all debts that arose before the date of the petition except those debts identified in Section 523 of the Bankruptcy Code. See 11 U.S.C. § 727(b).

Section 523(a)(1)(A) of the Bankruptcy Code provides that a discharge under Section 727 does not discharge individual debtors from taxes of the kind and for the periods specified in Section 507(a)(7). Conversely, unless the tax obligations fall into one of the Section 507(a) categories, they are discharged as *personal obligations.* Whether or not the personal prepetition tax obligations are discharged, however, exempt real property remains subject to any properly filed tax liens. 11 U.S.C. § 522(c)(2)(B).

(a) *Tax years 1979–1981.*

■ The certified certificates of assessments and payments filed by the Service in support of its cross motion for summary judgment reveal that the Millsaps' tax obligations for the years 1979, 1980, and 1981 were personal income tax obligations the returns for which were last due well before three years before the filing of the petition in this case on March 12, 1986.[1] Section

1. The debtors moved to strike the certified certificates of assessments and payments ("Exhibit A") filed by the Service in support of its motion. The grounds for the motion to strike encompass

507(a)(7)(A)(i) would provide no priority to taxes of such an old age. For each of those years, however, the obligations arose as the result of audit deficiencies. Section 507(a)(7)(A)(ii) of the Bankruptcy Code assigns a priority status to unsecured obligations arising from audit deficiencies that are assessed within 240 days before the filing of the petition. The certificates for the years 1979 through 1981 further reveal that the most recent assessment occurred on May 8, 1984, a date more than 240 days before the filing date.

Consequently, those obligations do not constitute a priority and are therefore not excepted from the discharge. Indeed, the Service concedes the Millsaps had no *personal liability* after the discharge for the 1979 through 1981 tax years. The Millsaps are therefore entitled to a judgment declaring that their personal liability for the 1979 through 1981 tax years has been discharged. The issues relating to the tax liens on the real property for these years, however, are discussed in Section 2 below.

(b) *Tax years 1982–1984.*

■ Section 507(a)(7)(A)(i) of the Bankruptcy Code assigns a priority for income tax obligations for which the return was last due within the three year period before the filing of the petition. The certified certificates of assessment show that the obligations for the years 1982, 1983, and 1984 arose from income taxes for which a return was due within the three year period before the filing of the petition on March 12, 1986. The return for the 1982 tax year was due April 15, 1983; the return for the year 1983 was due April 15, 1984; and the return for 1984 was due April 15, 1985.

As a result, the tax obligations for those years, including interest, are Section 507(a)(7) priority taxes and, as such, are excluded from the discharge by virtue of Section 523(a)(1)(A). *United States v. H.G.D. & J. Mining Company, Inc. (In re H.G.D. & J. Mining Co., Inc.),* 74 B.R. 122,

124 (S.D.W.Va.1986), *aff'd,* 836 F.2d 546 (4th Cir.1987); *In re Standard Johnson Co.,* 90 B.R. 41, 42 (Bankr.E.D.N.Y.1988). The Millsaps remain personally liable for the taxes, including interest, for the years 1982, 1983, and 1984. As to this, the Service is entitled to summary judgment in its favor as a matter of law.

(c) *Tax penalties for years 1982–1984.*

■ The certificates of assessment reflect that the Millsaps were assessed penalties for filing frivolous returns for the years 1982 through 1984. There is no evidence in this record that any of the penalties assessed compensated the Service for actual pecuniary loss such that these penalties would be excepted from the discharge pursuant to Section 507(a)(7)(G) and Section 523(a)(1)(A). *Standard Johnson Co., supra* at 44; *In re Jackson,* 80 B.R. 213, 215 (Bankr.D.Colo.1987); *In re New England Carpet Co., Inc.,* 26 B.R. 934, 936 (Bankr. D.Vt.1983). In fact, the Service has conceded that the penalties assessed against the Millsaps for the years 1983 and 1984 have been discharged. The same is true of any penalties assessed for 1982. As to this, therefore, the Millsaps are entitled to a judgment declaring that the penalties assessed for the years 1982 through 1984 have been discharged.

2. *Did the actions taken by the Service in selling the debtors' home violate Section 524(a)(2) or the automatic stay?*

In November of 1987, almost ten months after the Service sold the Millsaps' home and applied the proceeds in payment of their 1979 through 1981 taxes, the Millsaps filed a third amended complaint requesting a declaration that the alleged claim of the Service was unenforceable under Section 524(a)(2) or that the sale process violated the automatic stay.

■ The Millsaps' contention that any action taken by the Service violated the

12 pages of their memorandum. None are meritorious. Exhibit A is a domestic official record within the meaning of F.R.Civ.P. 44 and is authenticated as required by Rule 44(a)(1). It also

satisfies the requirements of F.R.Evid. 902(1) and (4). The motion to strike is therefore denied.

automatic stay can be rejected summarily. The Millsaps claimed the subject real property as exempt, and there were no objections to the exemption claimed. Thus, in 1987 the property had long since ceased to be property of the estate, and the automatic stay no longer precluded any action against the property. 11 U.S.C. §§ 541(a), 522(b), 522(*l*), 362(c)(1); *Samore v. Graham (In re Graham)*, 726 F.2d 1268, 1271 (8th Cir.1984); *Christy v. Heights Finance Corp.*, 101 B.R. 542, 544 (C.D.Ill.1987); *Crow v. Long*, 107 B.R. 184, 188 (E.D.Mo. 1989).

■ The only protection afforded the debtors at the time of the sale was that provided by the permanent injunction imposed by Section 524(a)(2) of the Bankruptcy Code. It is clear, however, that this provision is not applicable to the action taken by the Service to enforce its liens. Section 524(a)(2) relates only to the collection of a prepetition obligation "as a personal liability of the debtor." The Service has conceded that any deficiencies for the years 1979 through 1981 have been discharged, and the Service has not asserted any claim for those years against the Millsaps personally.

The Service does contend, however, that it had valid, enforceable tax liens on the Millsaps' real property that partially secured the obligations for the tax years 1979, 1980, and 1981. It is well settled, of course, that the validity and enforceability of a lien securing an obligation is not affected by the discharge of the debtors' personal liability for the obligation; the lien is preserved after the discharge is entered. *Isom v. United States (In re Isom)*, 901 F.2d 744, 746 (9th Cir.1990); *Lindsey v. Federal Land Bank of St. Louis (In re Lindsey)*, 823 F.2d 189, 190 (7th Cir.1987). Because the Millsaps had taken no action in the bankruptcy case to contest or invalidate the liens, there was nothing to prevent their enforcement by the Service. *Lindsey, supra* at 190; *Crow, supra* at 187. Nor will the bankruptcy discharge prevent enforcement of a valid lien on exempt property. 11 U.S.C. § 522(c)(2)(B); *Louisville Joint Stockland Bank v. Radford*, 295

U.S. 555, 583, 55 S.Ct. 854, 860, 79 L.Ed. 1593 (1935). The Service is therefore entitled to summary judgment against the Millsaps on this issue.

3. *The validity of the levy, seizure, and sale of the debtors' homestead.*

■ In December of 1988, almost two years after the sale of the Morocco Avenue home, the Millsaps filed their fourth amended complaint attacking the validity of the tax liens and the sale. The certificates of assessments and payments filed by the Service reflect that the Service mailed in April and May of 1984 the notices of assessments for the tax years 1979 through 1981. There is no evidence in this record, other than prosecuting the two civil actions that the district court dismissed in March and April, 1987, that the Millsaps took any administrative or legal action to contest the amount of the taxes due for the years 1979 through 1981 or to contest the procedure relating to the assessment, the giving of the notice, or the filing of the liens until they filed that fourth amended complaint.

The Millsaps filed the complaint initiating this adversary proceeding on July 22, 1986. The original complaint involved merely a request for a determination of the dischargeability of their *personal liability* for tax obligations for the years 1979 through 1984. It did not raise any issues relating to the validity of the Service's liens on the Millsaps' home.

When the discharge was entered by this court on September 15, 1986, the liens were not at issue. As discussed in Section 2 above, after the discharge was entered the Service was free to continue to enforce its liens on the Millsaps' residence. The Service recommenced its enforcement efforts, culminating in the sale of the residence on January 21, 1987. The proceeds of the sale were applied to the tax obligations for the years 1979 through 1981.

On December 30, 1988, almost two years after the sale of the home and the dismissal of both district court actions, the Millsaps filed a fourth amended complaint in this adversary proceeding. The amend-

ment was the first request that this court declare the assessment, liens, levies, seizure, and sale of the property to be invalid and improper. It is, then, not the validity of the liens that is subject to contest here. By then, the liens had already been enforced, and the proceeds had already been applied to pay the tax obligations for years 1979 through 1981. In other words, by the time the Millsaps first attacked the liens, the liens no longer existed; they had long since been satisfied through enforcement (or, in laymen's terms, foreclosure).

Despite the request by the Millsaps that the court declare the sale to have been invalid and improper, the only relief available to the Millsaps at this late date after the sale of their property and satisfaction of the liens is a refund of the taxes paid through the sale and satisfaction process.

As to an action for such a refund, Section 7422(a) of Title 26, United States Code, provides that:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

Section 505 of the Bankruptcy Code grants specific authority for the bankruptcy court to determine the right of the *estate* to a tax refund. Section 505(a)(2)(B) provides, however, that:

(2) The court may not so determine

\* \* \* \* \* \*

(B) Any right of the estate to a tax refund, before the earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.

Although Section 505 of the Bankruptcy Code grants limited jurisdiction to the bankruptcy court to consider a civil refund action, it nevertheless reiterates the condition precedent to suit similar to that set forth in 26 U.S.C. § 7422(a), that is, the trustee must first properly request a refund from the Service.

There is no evidence on this record that the Millsaps have ever filed a request for a refund with the Secretary of the Treasury. Absent the satisfaction of that condition, this court, as well as any other court, is precluded from entertaining a refund action. 26 U.S.C. § 7422(a); 11 U.S.C. § 505(a)(2)(B); *Thomas v. United States,* 755 F.2d 728 (9th Cir.1985); *Lipsett v. United States,* 37 F.R.D. 549 (S.D.N.Y.1965); *In re Qual Krom South, Inc.,* 119 B.R. 327 (Bankr.S.D.Fla.1990).

■ Moreover, that defect cannot be cured by filing a claim for refund now. Section 6511(a) of Title 26, United States Code, requires taxpayers to file any administrative claims for refund with the Secretary within three years from the time the return was filed or two years from the time the tax was paid, whichever is later. Since the sale of the Millsaps home and the application of credit to the payment of taxes took place on January 21, 1987, the Millsaps were required to file a claim with the Secretary on or before January 20, 1989. Instead, the Millsaps filed their fourth amended complaint in this proceeding on December 30, 1988, just 21 days before that administrative limitations period expired. Because they did not then, and cannot now, file a claim for refund with the Secretary, the Millsaps are precluded by Section 7422(a) of Title 26 and by Section 505(a)(2)(B) of the Bankruptcy Code from prosecuting a civil action for a refund in any court, much less this court.

Because this court is precluded from entertaining this claim for a refund by virtue of the Millsaps' failure to satisfy the condition precedent, it is unnecessary to determine whether the bankruptcy court has subject matter jurisdiction to consider a suit for refund filed by the debtor, as distinguished from the trustee on behalf of

the estate. It is likewise unnecessary to consider, if the court had jurisdiction, whether it should exercise that jurisdiction to consider a refund for a payment to the Service made by virtue of the post-petition sale of the debtors' exempt property.

For the foregoing reasons, the Millsaps are not entitled to a judgment determining that the assessment, lien, levy, seizure, and sale on and of the debtors' home was illegal and invalid. Instead, the Service is entitled to judgment on this issue.

### 4. Determination of 1982 Tax Obligation.

■ The Millsaps' second amended complaint requested that the court determine the correct amount of the tax liability for 1982. By virtue of Section 505(a)(1) of the Bankruptcy Code, this court has subject matter jurisdiction to determine the amount or legality of any tax. The Service acknowledges the court's jurisdiction to determine the amount of the 1982 taxes, but it requests that the court abstain from hearing the matter pursuant to 28 U.S.C. § 1334(c)(1). Section 1334(c)(1) permits the court to exercise its discretion to abstain from determining a proceeding within its jurisdiction "in the interest of justice." In this context, therefore, the court should consider the purpose to be served by exercising its jurisdiction.

Under the old Bankruptcy Act of 1898, the court had broad jurisdiction to consider the validity of a previous tax assessment if a final determination had not been made by another court; this jurisdiction existed regardless of whether the time had expired for the debtor to contest the assessment in a non-bankruptcy forum. *See In re E.C. Fisher Corp.*, 229 F. 316 (D.Mass.1915). Further, the trustee was not ordinarily bound or estopped by the acts or omissions of the debtor as to any question the trustee could raise concerning the amount or validity of a tax claim. 3 King, Bobitt, Herzog & Levin, *Collier on Bankruptcy* ¶ 505.01 (15th ed. 1991); *Boyle v. Well (In re Gustav Schaefer Co.)*, 103 F.2d 237 (6th Cir.), *cert. denied*, 308 U.S. 579, 60 S.Ct. 96, 84 L.Ed. 485 (1939); *Henderson County v.*

*Wilkins (In re Fleetwood of Hendersonville Hotel Corp.)*, 43 F.2d 670 (4th Cir. 1930); *In re Raflowitz*, 37 F.Supp. 202 (D.Conn.1941). These cases, decided under the Bankruptcy Act of 1898, reflect the Congressional intent to provide an opportunity for the trustee, on behalf of the creditors, to contest the validity and amount of tax claims when the debtor had been unwilling or unable to do so.

The legislative history leading to the enactment in 1978 of Section 505 of the Bankruptcy Code clearly indicates that Congress intended to continue the bankruptcy court's jurisdiction to determine certain tax issues for the benefit of the estate. 124 Cong. Rec. H11095 (1978). In addition, Congress refined the statute for the express purpose of providing a forum for the rapid determination of claims so that disputed tax claims would not delay the conclusion of the administration of a bankruptcy estate. *Id.* See also In re Diez, 45 B.R. 137, 139 (Bankr.S.D.Fla.1984) (*citing Cohen v. United States*, 115 F.2d 505 (1st Cir.1940)).

Here the trustee is not seeking a determination of the amount of these taxes in the process of administering the estate. Instead, it is the debtors who are contesting the amount of a non-dischargeable debt. Although Congress extended jurisdiction to the bankruptcy court to determine the debtors' personal tax liability under Section 505(a)(1), the debate in the House of Representatives leading to the passage of this section clearly shows that, when there is no need for a determination of the amount of the tax for estate administration purposes, Congress did not intend or foresee that the bankruptcy court would be the forum for this litigation. The drafters explained the section this way:

> If a tax authority decides not to file a claim for taxes which would typically occur when there are few, if any, assets in the estate, normally the tax authority would also not request the bankruptcy court to rule on the debtor's personal liability for a non-dischargeable tax. Under the House amendment, the tax authority would then have to follow the normal procedures in order to collect a

nondischargeable tax. For example, in the case of nondischargeable Federal income taxes, the Internal Revenue Service would be required to issue a deficiency notice to an individual debtor, and *the debtor could then file a petition in the Tax Court—or a refund suit in a district court—as the forum in which to litigate his personal liability for a nondischargeable tax.* (Emphasis added).

124 Cong.Rec. H11095, H11110–H11111 (1978).

This portion of the House debate anticipates precisely the situation presented here. The Service did not file a claim; there were no assets administered in this Chapter 7 case; and there will be no distribution from the estate to the Service or to any other creditor. As a result, this controversy as to the amount of 1982 taxes has no effect on creditors generally; it involves only the debtors and the Internal Revenue Service. For these obvious reasons, the trustee has no interest in the matter and has not sought any relief. The principal policy reasons for giving this court the authority to determine this dispute are not present in this case.

The Millsaps amended their complaint on September 1, 1987, to litigate the amount of the 1982 taxes that were assessed almost four and one-half years earlier. There is no evidence on this record that the debtors made any effort earlier to contest the tax liability in the appropriate forum in a timely fashion. Given this, it appears that the Millsaps are merely taking advantage of what may look to them to be a renewed opportunity to contest the 1982 tax obligations.

The court is persuaded that these facts justify this court's discretionary abstention under the interest of justice standard of 28 U.S.C. § 1334(c)(1). The Millsaps have had ample opportunity to contest the amount of the 1982 taxes through the Service's administrative procedures and in their choice of three courts—the United States tax court, the United States court of claims, and the United States district court. This record fails to reflect that they took any of these steps within the time periods prescribed by law for them to have done so. After thereby sitting on their rights, the Millsaps find themselves precluded by general law from disputing the amount of taxes the Service contends they owe for 1982. To remedy this situation, they invoke this court's Section 505(a)(1) jurisdiction to determine the amount of the tax.

Were this court to respond to the Millsaps' tardy call by exercising its jurisdiction, no bankruptcy interest would be furthered. As the court has already pointed out, the estate and creditors are not affected by this matter. Although it is true that an exercise of this jurisdiction would benefit the debtors and further the "fresh start" policy of the Bankruptcy Code, that interest would only be served at the expense of the orderly enforcement of the internal revenue laws. Unless this court abstains in these unusual circumstances, every taxpayer would know that he or she could ignore all of the tax protest and determination procedures and opportunities provided by the Internal Revenue Code and regulations, allow all time periods they provide to expire, watch the Service finally determine a tax, and then years later come into this court and obtain the judicial determination the taxpayer chose not to seek before. The interest of justice cannot be furthered by that result.

In addition to this sound policy reason for abstaining from determining the 1982 tax liability, there is another reason for abstaining here, as well. The docket of this court can only be fairly described as in crisis. The number of cases filed, the complexity of the cases, the larger-than-average percentage of Chapter 11 cases, and the lack of new judgeships to keep up with the load, have all operated to prevent this court from hearing and determining cases, contested matters, and adversary proceedings promptly as contemplated by the drafters of the Bankruptcy Code and as the parties litigant have every right to expect and demand. Although this court regularly holds hearings well into the evenings and on Saturdays, Sundays, and holidays, and despite the welcomed assistance of visiting judges from both within and outside

our circuit, there is simply much more to do than this court can complete with dispatch. Since the court first wrote about these conditions in March, 1991, in *Shop & Go, Inc. v. D.K. Patterson Construction Co. (In re Shop & Go, Inc.)*, 124 B.R. 915, 918–19 (Bankr.M.D.Fla.1991), the situation has deteriorated even further. This proceeding is a case in point: the court took under advisement the pending motions decided in this order in January, 1990—some 22 months ago. No one can argue that this delay is satisfactory in any respect, yet the docket permitted no earlier determination of the issues as framed by the parties.

■ Although the court's docket conditions standing alone would probably not justify an order of abstention, they surely may constitute an additional consideration weighing in favor of abstention. *Eastport Associates v. City of Los Angeles (In re Eastport Associates)*, 935 F.2d 1071, 1075 (9th Cir.1991). It is especially appropriate to consider this factor in this case because there is little bankruptcy interest present here. As indicated above, the Millsaps' bankruptcy case is a no asset case. The Service had no obligation to file a proof of claim in such a case and did not do so. A determination of the 1982 tax would have no conceivable effect on the administration of the bankruptcy estate. Based on these facts, the claim for a determination of the 1982 tax is not a core proceeding within the meaning of 28 U.S.C. § 157(b) and (c). It is doubtful that the matter is even "related to" this bankruptcy case within the meaning of 28 U.S.C. § 1334(b). *See Security Commission v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1141 (6th Cir.1991). Our docket conditions might not justify abstaining from a core proceeding within this court's original and exclusive jurisdiction under 28 U.S.C. § 1334(a). It is entirely appropriate, however, for the court to consider its docket conditions in deciding whether to abstain from hearing this non-core proceeding that falls at best within the court's original but not exclusive jurisdiction under 28 U.S.C. § 1334(b).

On these facts, therefore, it is clear that there is no bankruptcy purpose to be served by a determination by this court of the amount of the debtors' tax liability for 1982. Unfortunately, time on this court's calendar is a scarce resource. The fact that the Millsaps passed up numerous opportunities to have their 1982 tax dispute resolved in other forums weighs in favor of this court's abstention from determining that dispute at this late date. Accordingly, in the interest of justice, the court should and will abstain from the consideration of the amount owed by the debtors for the 1982 tax year. 28 U.S.C. § 1334(c)(1); *In re Diez, supra* at 139; *Kaufman v. United States (In re Kaufman)*, 115 B.R. 378, 379 (Bankr.S.D.Fla.1990).[2]

## JURISDICTION, DISPOSITION, AND CONCLUSION

■ This court has jurisdiction of the parties and the subject matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the standing order of reference entered by the district court.

The claims determined in Sections 1 and 2 of the Discussion above are core proceedings within the meaning of 28 U.S.C. § 157(b). Although the claim discussed in Section 4 of the Discussion above is a non-core proceeding within the meaning of 28 U.S.C. § 157(c), this court may nevertheless enter a final order of abstention as to that claim, subject to appellate review in the district court under F.R.B.P. Part VIII, as has been made clear by Section 309(b) of the Judicial Improvements Act of 1990, which amended 28 U.S.C. § 1334(c)(2), and F.R.B.P. 5011(b), effective August 1, 1991. *Nationwide Roofing & Sheet Metal, Inc. v. Cincinnati Insurance Co. (In re Nationwide Roofing & Sheet Metal, Inc.)*, 130 B.R. 768, 777 (Bankr.S.D.Ohio 1991); *see also* Local Rule 108(c). Accordingly, the court is contemporaneously entering a separate judgment on the claims determined in Sections 1 and 2 above and abstaining from

---

**2.** The court is mindful of *In re Witte*, 92 B.R. 218 (Bankr.M.D.Mich.1988), cited by the debtors, but finds the facts of that case readily distinguishable from those at issue here.

determining the claim discussed in Section 4 above.

The claim discussed in Section 3 of the Discussion above is a non-core proceeding within the meaning of 28 U.S.C. § 157(c). The Undisputed Material Facts and Section 3 of the Discussion above shall therefore constitute this court's proposed findings of fact and conclusions of law to the district court pursuant to F.R.B.P. 9033.

DONE and ORDERED.

**Bankruptcy No. 86–00487–BKC–6C7. Adv. No. 86–0154.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Nov. 4, 1991.

See also 133 B.R. 547.

William D. Millsaps and Anna Jean Millsaps, debtors pro se.

Hildy S. Stern, Trial Atty. Tax Div., U.S. Dept. of Justice, Washington, D.C.

Steven R. Bechtel, Mateer, Harbert & Bates, P.A., Orlando, Fla., for Earl K. Wood and Ford S. Hausman.

Eugene S. Legette, Orlando, Fla., for Paul Roper and Martha O. Haynie.

Andrea A. Ruff, trustee, Orlando, Fla.