**In re AWB ASSOCIATES, G.P., Debtor.**

**Bankruptcy No. 92–10430S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 10, 1992.

Kenneth Goodkind, Fellheimer & Eichen, Philadelphia, Pa., for debtor.

Sheila R. Miller, Asst. City Atty., Camden, N.J., for City of Camden.

Autherine B. Smith, Klehr, Harrison, Harvey, Branzburg & Ellers, Philadelphia, Pa., for Resolution Trust Co.

Frederic Baker, Philadelphia, Pa., Asst. U.S. Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

Before us is a Motion of the Debtor, AWB ASSOCIATES, G.P. ("AWB"), for a determination of its real property tax liability on its only asset, a parcel of real estate located at 1421–1521 Admiral Wilson Boulevard, Camden, New Jersey ("the Proper-

ty"), for the years 1985 through 1992, to the City of Camden, New Jersey ("Camden"). AWB contends that, pursuant to 11 U.S.C. § 505, this court has the authority to assess the value of the real property for *ad valorem* real estate tax purposes in all years subsequent to its purchase of the Property in 1985, despite its payment of the taxes without protest through 1989, and its attempt to appeal its tax liability in 1991, which was denied because the taxes were not paid for that year.

Camden claims that this contested matter is non-core and is governed exclusively by New Jersey state law. Camden further requests that this court abstain from granting the relief AWB seeks because AWB failed to timely exercise its rights to contest the assessment of the real estate under New Jersey state law procedures.

We find that the issue before the court is a core proceeding and that, under 11 U.S.C. § 505, since none of the assessments in issue were previously adjudicated, we have the authority to determine AWB's real property tax liability for the years 1985 through 1992, irrespective of the lapse of time in issue. However, although concluding that federal bankruptcy law overcomes any state law procedural shortfalls by AWB in seeking reassessment, we also find that the state law of New Jersey controls the substance of AWB's claims. Further, due to the lack of direct evidence regarding valuation of the Property prior to tax year 1992, we find that AWB's request for reassessment can be granted only from 1990 through 1992, and only in part in 1990 and 1991. We thus conclude that the assessed value of the Property for 1992 real property taxes must, as AWB argues, be fixed at $590,000. However, as to tax years 1990 through 1991, we conclude that the evidence supports no finding of a lower assessment value than $750,000, the purchase price of the Property; and that the evidence does not support an adjustment for tax years preceding 1990.

## B. PROCEDURAL AND FACTUAL HISTORY

This matter arises in the course of a voluntary Chapter 11 bankruptcy case filed by AWB on January 23, 1992. AWB is a Pennsylvania general partnership including Michael Grasso as one of its general partners. Grasso is the apparent managing partner of a collection of about a dozen single-asset partnerships which have filed petitions in this court. All of these cases appear to be progressing towards confirmation. AWB's single asset is the Property, which is comprised of two commercial buildings located on 9.9 acres of land on a heavily-travelled highway artery proximate to Philadelphia in its economically-depressed neighboring City of Camden.

AWB's bankruptcy case is proceeding rather smoothly. An initial Plan and Disclosure Statement were filed on July 10, 1992. On August 12, 1992, in response to a few Objections to the Debtor's Disclosure Statement by the Resolution Trust Company ("the RTC"), which has what might loosely be described as a blanket mortgage on the assets of the Grasso-managed debtors in bankruptcy, the Debtor agreed to file an Amended Plan and an accompanying Amended Disclosure Statement by September 10, 1992, prior to hearing of September 16, 1992, to determine whether the Amended Disclosure Statement contains amendments requiring a re-noticing to all creditors and, if not, whether it can be approved for distribution. No other contested matters have arisen in the course of this case, although we were informed of one adversary proceeding which has apparently been resolved. *See* page 274 *infra.* We should add that none of the other Grasso-controlled entities have sought to invoke 11 U.S.C. § 505 in the course of their cases.

On April 2, 1992, AWB filed the Motion to Determine the Liability for Taxes Owed to City of Camden ("the Motion") in issue. The Motion sought a determination of the value of the Property for *ad valorem* real estate tax purposes for the years 1985 through 1992. The hearing on the Motion was continued, by agreement of the parties, from April 29, 1992, to June 24, 1992, and again to July 29, 1992.

On July 27, 1992, Camden requested a further continuance, claiming that it was

only recently made aware of AWB's appraisal of the Property and had not yet produced one of its own. In light of the opposition of AWB to a further continuance and our observations that the matter had already been continued for three months and that AWB's presentation of an appraisal should hardly have been a surprise to Camden, we denied this request and conducted the hearing on the Motion on that date. In support of the Motion, AWB offered the testimony of Grasso and an expert appraiser, Allen Black.

Grasso testified that the Property, containing two contiguous parcels, was purchased from Wm. G. Rohrer Corp. ("Rohrer") by him and placed in the name of the Debtor in July, 1985. The amount paid by Grasso at settlement was $750,000, although this figure included a $75,000 broker's fee absorbed by Grasso. The sale was financed, for the most part, by Rohrer, which took back a purchase money note secured by the Property in the amount of $600,000.

Prior to the sale, the Property was the long-time site of the Rohrer's car dealership. At the time of the hearing, the buildings were leased and occupied by a truck driving school and a truck repairman. Another tenant, a warehousing company, is scheduled to occupy the premises in September, 1992. However, as a result of vandalism and the departure of AWB's former primary tenant, a large greenhouse, the larger buildings and much of the land were described as in a poor condition.

Grasso further testified that, shortly after the sale, AWB discovered that Rohrer had complied with applicable New Jersey environmental clean-up laws. This discovery revealed that AWB may be exposed to liability for possible clean-up costs. Consequently, AWB initiated an adversary proceeding against Rohrer in this court. In settlement of this dispute, AWB and Rohrer have entered into a proposed agreement which provides, *inter alia*, that the sale price of the Property is to be reduced to $450,000. The proposed agreement does not, however, indicate whether the reduced price is based upon the "true market val-

ue" of the Property. The consummation of the agreement is scheduled to follow our decision of the present Motion.

In support of its contention that Camden had mis-valued the Property, AWB also offered the testimony and appraisal report of Black, a licensed New Jersey real estate appraiser. Black's testimony and the appraisal report indicated that the value of the Property, as of October, 1991, was $590,000. Black also stated that, while his evaluation of the Property's value was rendered only as of October 1, 1991, his analysis revealed that the value of the Property had declined from its initial value in 1985, of which he inferred to be $750,000, less the $75,000 commission, or $675,000, to the current value of $590,000. This decrease in value was attributed to the overall decline and deterioration of real estate values in Camden. Black indicated that the market values of the Property had probably remained constant from 1985 to 1989, and declined thereafter. However, Black expressly declined to offer any opinion of the fair market value or the rate of decline of the Property for the tax years 1985 through 1991. He merely stated that, in light of his assumption of a $675,000 purchase price of the Property, he believed that its value was between $590,000 and $675,000 throughout that period.

The parties stipulated that, between 1985 and 1991, the two parcels of the Property were assessed by the City in the following amounts for each year:

| | Lot 1 | Lot 11 |
|---|---|---|
| Land | $148,000 | $37,000 |
| Improvements | 137,000 | 3,000 |
| TOTAL | $285,000 | $40,000 |

They also stipulated that the total assessment of $325,000 was revised to $1,305,700 as the result of New Jersey legislation requiring that tax assessments be based upon the full value of properties. Finally, they agreed that the ratio of the assessment of Camden properties to their actual value was, due to declining values of Camden realty, as follows from 1992 (when the legislation required assessment at full value) back to 1984:

| Year | Percent |
|------|---------|
| 1992 | 96.33% |
| 1991 | 24.6% |
| 1990 | 24.93% |
| 1989 | 30% |
| 1988 | 31.47% |
| 1987 | 40.58% |
| 1986 | 45.17% |
| 1985 | 48.93% |
| 1984 | 51.05% |

AWB paid the real estate taxes due on the Property from 1985 and paid part of the tax due for 1989. Grasso testified that AWB was unable to pay the remainder of the 1989 taxes or the real estate taxes for 1990 through 1992.

In 1991, two Petitions for Re-assessment of Taxes were filed with the Camden Board of Assessors by Rohrer (still listed on Camden's rolls as the owner of one of the parcels) on AWB's behalf. Prior to that time, neither AWB nor any entity on its behalf had filed any objections or contested the real estate taxes. No evidence was offered by either party whether a hearing or any other activity occurred in connection with the petitions. AWB does allege in its Motion that the Board of Assessors, without opinion, refused to reduce the assessment for 1991. Assuming that such a decision was entered, AWB had the right under New Jersey Law to appeal this decision to the New Jersey Tax Court. However, as a condition of filing such an appeal, AWB was required to first pay the taxes in issue in full. AWB did not pay the taxes, allegedly due to its financial inability to do, nor did it file an appeal.

Camden did not submit any evidence in support of its opposition to the Motion at the hearing. Following the hearing, we entered a Briefing Order of July 30, 1992, allowing each party to file an Opening Brief by August 7, 1992, and a Reply Brief by August 20, 1992. Both parties timely filed two Briefs.

## C. DISCUSSION

### 1. THIS COURT HAS AUTHORITY TO DETERMINE AWB'S TAX LIABILITY TO CAMDEN FOR ALL OF THE TAX YEARS IN QUESTION.

A bankruptcy court has the authority to hear and determine core proceedings arising "under" or "in" cases brought under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Core proceedings into which categories the instant proceeding falls are "matters concerning the administration of the estate" and "allowance or disallowance of claims against the estate." 28 U.S.C. §§ 157(b)(2)(A), (b)(2)(B).

Camden contends that this matter is a non-core proceeding because it involves an issue of a state municipality's taxes and application of New Jersey law, and therefore is not within this court's jurisdiction or competence to decide. Camden's position is incorrect for several reasons. Firstly, a matter is not rendered non-core simply because its resolution requires application of state law. 28 U.S.C. § 157(b)(3). Secondly, by filing a proof of claim in this case, as it admittedly did, Camden subjected the determination of its rights against AWB to this court's equitable powers. *See Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990). Finally, 11 U.S.C. §§ 505(a)(1) and (2)(A) expressly provide, as follows, that a bankruptcy court may determine a debtor's tax liability:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, ... whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before commencement of the case under this title; ...

*See, e.g., In re East Coast Brokers & Packers, Inc.*, 142 B.R. 499, 500–01, 23 B.C.D. 262, 263 (Bankr.M.D.Fla.1992); *In re Fairchild Aircraft Corp.*, 124 B.R. 488, 491 (Bankr.W.D.Tex.1991); and *In re Lipetzky*, 64 B.R. 431, 434 (Bankr.D.Mont. 1986).

The provisions of § 505 are, to a certain degree, discretionary ("the court

*may* determine the amount or legality of any tax"), and a bankruptcy court may elect to abstain from determining the tax dispute. In deciding whether to exercise this discretionary § 505 power, bankruptcy courts have considered several factors. In *In re Galvano,* 116 B.R. 367, 372 (Bankr. E.D.N.Y.1990), relied upon by Camden in its claim of the propriety of abstention, the court enumerated several factors which it deemed appropriate to consider in deciding whether to determine a tax dispute. These included (1) the complexity of the tax issue to be decided; (2) the need to administer the bankruptcy case in an orderly and efficient manner; (3) the burden on the bankruptcy court's docket; (4) the length of time required for trial and decision; (5) the asset and liability structure of debtors; and (6) any prejudice or potential prejudice to both the debtor and taxing authority. *Id.*

This matter is not very complex. It was already heard by this court in a trial lasting only a couple of hours and we are ready to decide it. The issue of AWB's liability to Camden could be significant to the success of AWB's plan, which will be before us for confirmation very shortly. Given the limited number of creditors of the Debtor and its apparent resolution of its differences with Rohrer and the RTC, this dispute is the only critical contested matter in issue in determining the assets and liabilities of the Debtor. Thus, in the instant matter, the only *Galvano* factor at issue is whether the decision to abstain would result in unfair and unusual prejudice to either AWB or Camden.

Camden argues that a decision by this court to resolve this dispute will be unfairly prejudicial to it. It maintains that, under applicable state law, AWB's right to challenge the tax assessments for the years 1985 through 1991 has expired and that any review of the assessments would "undermine" the state's tax laws and result in "chaos" in its tax assessment system because it would be unable to rely on the finality of its tax assessments.

However, we find that the correct analysis of the abstention issue is thusly enunciated in *Fairchild Aircraft, supra,* 124 B.R. at 491:

> [a]bstention from deciding a tax adjudication question under Section 505 is only appropriate under a showing that uniformity of assessment is of significant importance. H.R.Rep. No. 595 [95th Cong., 1st Sess.] *supra* at 356 [ (1977) ]; *In re Diez,* 45 B.R. 137, 139 (Bankr. S.D.Fla.1984). No such showing has been made here. If the tax *rate* were the subject of this motion, perhaps abstention might be appropriate. Because the trustee only challenges the excessiveness of the appraisal district's valuation of the estate's property, the taxes to be paid by other taxpayers will not be affected, nor will uniformity of assessment be placed in issue (*i.e.,* the overall valuation methodology used by the appraisal district is not being generally attacked).

The tax issue before this court, like that in *Fairchild Aircraft,* does not involve Camden's established tax rate. Rather, it concerns the debtor's challenge of the taxing authority's assessment of the particular Property owned by AWB. A decision by this court is therefore unlikely to affect the taxes to be paid by other taxpayers, nor will it undermine uniformity of Camden's assessments. Therefore, our decision to exercise our discretionary authority to determine taxes under § 505 will not result in a large measure of prejudice to Camden.

On the other hand, a decision to abstain would result in significant prejudice to the estate of AWB and ignore one of the primary purposes of 11 U.S.C. § 505. Under New Jersey law, AWB had until August 15th of each tax year through 1992 to file a challenge to the current year's tax assessment. *See* N.J.STAT.ANN. § 54:3–21 (West 1992). Since AWB failed to exercise that right under New Jersey law, it would now be barred from appealing the tax assessments for the years 1985 through 1992 in the New Jersey state tax system. AWB's loss of its right to contest the assessments would therefore result in great prejudice to its estate, since it would be bound by the amount of taxes assessed by Camden.

Further, abstention on our part would abrogate one of the primary reasons for which § 505 was enacted. That was to protect creditors

> from the dissipation of an estate's assets which could result if creditors were bound by a tax judgment which a debtor, due to its ailing financial condition, failed to contest. [*In re*] *Northwest Beverage,* 46 B.R. [631,] 632 [ (Bankr.N.D.Ill.1985) ]; *In re Fiedel Country Day School,* 55 B.R. 229, 231 (Bankr.E.D.N.Y.1985); *see also, In re Century Vault Co.,* 416 F.2d 1035, 1041 (3d Cir.1969). (In discussing the rationale of § 2a (2A) of the Bankruptcy Act, the precursor to § 505, the Court explained that one type of "hazardous situation" that confronts creditors is where the debtor has little or no interest in contesting a tax assessment and permits an adjudication to be taken against him prior to bankruptcy. The Court remarked that in this situation creditors "should not be bound by omissions of the Bankrupt.")

*Galvano, supra,* 116 B.R. at 372. *Accord, City Vending of Muskogee v. Oklahoma Tax Comm'n,* 898 F.2d 122, 125 (10th Cir. 1990), *cert. denied,* — U.S. —, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990); *East Coast Brokers, supra,* 142 B.R. at 500, 23 B.C.D. at 263; *In re Ledgemere Land Corp.,* 135 B.R. 193, 196 (Bankr.D.Mass.1991); and *Lipetzky, supra,* 64 B.R. at 434.

The factors at work in the cases relied upon by Camden, *In re Millsaps,* 133 B.R. 547, 554–56 (Bankr.M.D.Fla.1991); and *Diez, supra,* were quite distant from the factors at play here. *Diez* was an individual no-asset case. 45 B.R. at 138. *Millsaps* involved a contest of tax liability by the debtors, not their trustee, in the year in which the court abstained. 133 B.R. at 554. The tax determinations in these cases had, therefore, no effect on creditors other than the taxing authorities whose claims were in issue. Here, AWB, standing in the shoes of a trustee as a debtor-in-possession, 11 U.S.C. § 1107(a), is challenging Camden's assessment for the benefit of all of AWB's creditors. Moreover, this court, while extremely busy, has avoided the cri-

sis described in the Florida bankruptcy courts in *Millsaps.* 133 B.R. at 555–56.

■ When a bankruptcy court decides to exercise it authority to determine taxes pursuant to § 505, as we do here, it is precluded from rendering a decision only where the taxes have been "contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before commencement of the case under this title." 11 U.S.C. § 505(a)(2)(A). *See East Coast Brokers, supra,* 142 B.R. at 501, 23 B.C.D. at 263; *Ledgemere, supra,* 135 B.R. at 197; *Fairchild Aircraft, supra,* 124 B.R. at 491; and *In re Washington Mfg. Co.,* 120 B.R. 918, 919 (Bankr. M.D.Tenn.1990). This court must therefore consider whether there have been adjudications as to the tax years at issue prior to the commencement of AWB's bankruptcy.

No evidence was presented to the court which indicated that any prior adjudication of AWB's real estate tax liability to Camden occurred. AWB alleged in its Motion that no adjudication had occurred. Camden did not address the issue at the hearing or in its Brief. Rather, Camden's position on the matter appeared to be simply that AWB's failure to exercise its right to appeal prior to the expiration of the applicable statute of limitation barred it from renewing those rights in the bankruptcy proceeding.

This court also expressed concern as to how far back a debtor could reasonably extend § 505, suggesting that the periods in which AWB had quietly paid its taxes in full (1985–88) were perhaps too remote to come within the scope of § 505.

■ This court is now convinced that neither a debtor's failure to meet state-law procedural requirements nor the lapse of time between the tax year and the time of the filing and determination of a § 505 motion preclude us from considering the amount and legality of a tax for any year in issue. In *Arkansas Corporation Comm'n v. Thompson,* 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244 (1941), relied upon heavily by Camden, the court refused to sustain a trustee's challenge of state tax

liability only because a "quasi-judicial" state commission had ruled upon the very matter in issue. The ability of bankruptcy courts to proceed to rule on any and all issues of tax liabilities of debtors, when there have been no prior determinations by any such state quasi-judicial or judicial body, is well-established in subsequent decisions in this Circuit. *See In re Century Vault Co.*, 416 F.2d 1035, 1040, 1041 (3d Cir.1969); and *In re Monongahela Rye Liquors, Inc.*, 141 F.2d 864, 866–68 (3d Cir. 1944). *Accord, e.g., City Vending, supra*, 898 F.2d at 124–25; and *City of Amarillo v. Eakens*, 399 F.2d 541, 545–44 (5th Cir. 1968), *cert. denied*, 393 U.S. 1051, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969).

With the exception of one decision, *In re Qual Krom South, Inc.*, 119 B.R. 327, 329 (Bankr.S.D.Fla.1990), there is no support for the principle that a debtor's failure to follow state-court procedures (there, filing for a refund within a statutory one-year period) bars application of § 505. We agree with all of the other authority on this point, which concludes that procedural requirements are pre-empted by the Bankruptcy Code, *Fairchild Aircraft*, 124 B.R. at 493 n. 3, and find that the contrary holding in *Qual Krom South* is "unpersuasive." *Ledgemere, supra*, 135 B.R. at 198. *Accord, City Vending, supra*, 898 F.2d at 124–25; *East Coast Brokers, supra*, 142 B.R. at 500, 23 B.C.D. at 263; *Washington Mfg., supra*, 120 B.R. at 920; *In re Electronic Theatre Restaurants, Inc.*, 85 B.R. 45, 47 (Bankr.N.D.Ohio 1988); and *In re Palm Beach Resort Properties, Inc.*, 51 B.R. 363, 364 (Bankr.S.D.Fla.1985). It might further be said that it is this very failure to invoke state-court procedures which *allows* the bankruptcy court to determine the matter, in light of the holding of *Arkansas Corporation* and the limitation included in § 505(a)(2)(A).

However, we do observe that, at some point, the staleness of the tax years regarding which § 505 is invoked becomes relevant. A dated claim may be less relevant to the administration of the estate, and more susceptible to abstention. *Compare Millsaps, supra*, 133 B.R. at 554–56.

Also, as we shall see at pages 280–282 *infra*, it is more difficult to met the state-law substantive standards for contesting tax assessments as to past years than as to the current tax year.

However, we find, without reservation, that AWB's failure to pursue its state remedies does not preclude this court from exercising jurisdiction or rendering a decision on any of the tax years involved in the present dispute, nor would abstention as to any of these tax years be appropriate. Accordingly, we find that we have the authority under 11 U.S.C. § 505 to determine the assessed value of AWB's Property for real estate taxes for all of the years in issue, 1985 through 1992 inclusive, and should exercise same.

2. AWB FAILED TO OVERCOME THE PRESUMPTION OF CORRECTNESS OF THE TAX ASSESSMENT FOR THE YEARS 1985–89; IS ENTITLED TO ONLY PART OF THE RELIEF REQUESTED AS TO THE YEARS 1990–91; AND WILL BE AWARDED THE FULL RELIEF SOUGHT AS TO THE TAX YEAR 1992 ONLY.

As is stated in *Fairchild Aircraft, supra*, as a corollary to its statement that bankruptcy law prevails over state procedural law in tax matters, 124 B.R. at 492,

[t]he valuation of property for purposes of determining property taxes must be consistent with state law principles, as the valuation is merely part and parcel of the adjudication of the tax due and owing, a question controlled by state law ..., the bankruptcy court gives full faith and credit to the law of the state upon which the tax is based.

*See also Connecticut Performing Arts Foundation v. Brown*, 47 B.R. 911, 917–18 (D.Conn.1985) (although bankruptcy court properly accepted jurisdiction over dispute concerning the validity of a tax exemption, it improperly applied stringent Connecticut law in mandating the granting of the exemption).

In the instant case, the Property at issue is located in New Jersey, and hence the

substantive law regarding tax assessments which governs is the law of the state of New Jersey.[1] New Jersey law provides that real estate taxes must be assessed by October 1 of the preceding year upon the "full and fair value of each parcel of real property situate in the taxing district at such price as ... it would sell for at a fair and bona fide sale by private contract...." N.J.STAT.ANN. § 54:4–23 (West 1992). Once the "full and fair" value is determined, the taxable value of the property is determined by applying the tax ratio and tax rate for the county as established by law. *Id.*

New Jersey courts have held that "full and fair value," as used in N.J.STAT. ANN. § 54:4–23, is the equivalent of true value or market value. *Willingboro Chrysler/Plymouth, Inc. v. Edgewater Park Twp.*, 6 N.J.Tax 168, 176 (1983). Further, "market value" is a synonym for true value or full and fair value, and means the most probable price in cash, terms equivalent in cash, or in other precisely revealed terms, for which the appraised property will sell in a competitive market under all conditions requisite to a fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under undue duress. *Pantasote Co. v. City of Passaic*, 100 N.J. 408, 412, 495 A.2d 1308, 1310 (1985) ("true value" is the value property would bring at fair, bona fide, and uncoerced private sale). *See also Petrizzo v. Borough of Edgewater*, 2 N.J.Tax 197, 200 (1981); and *ITT Continental Baking Co. v. East Brunswick Township*, 1 N.J.Tax 244, 251–52 (1980) ("true value" is the price hypothetical that a willing buyer would pay a hypothetical willing seller).

New Jersey law also requires that real property taxes are levied by municipalities on an *ad valorem* basis "according to the same standard of value." N.J. CONST., Art. VIII, § 1, ¶ 1[a]. Consequently, it endows taxpayers with the right to appeal real property taxes which they believe do not meet the constitutionally-mandated standard. N.J.STAT.ANN. § 54:3–21 (West 1991); *F.M.C. Stores Co. v. Borough of Morris Plains*, 195 N.J.Super. 373, 381, 479 A.2d 435, 439 (1984), *aff'd*, 100 N.J. 418, 495 A.2d 1313 (1985); and *Weyerhauser Co. v. Borough of Closter*, 190 N.J.Super. 528, 532, 464 A.2d 1156, 1158–59 (1983).

Property assessments made by a proper taxing authority are presumed correct. *Willingboro Chrysler/Plymouth, supra*, 6 N.J.Tax at 177. This presumption of validity of municipality's original tax assessment is not simply an evidentiary presumption serving as a mechanism to allocate burden of proof, but it is a construction expressing the concept that, in tax matters, it is to be presumed that governmental authority has been exercised correctly and in accordance with the law. *Pantasote, supra*, 100 N.J. at 413, 495 A.2d at 1311. Consequently, a taxpayer who contests a municipality's assessment of its real property for tax purposes bears the burden of ultimate persuasion and must establish facts which overcome the presumption of correctness of assessments. *Six Cherry Hill, Inc. v. Cherry Hill Twp.*, 7 N.J.Tax 120, 126 (1984), *aff'd*, 8 N.J.Tax 334 (N.J.Super.1986); and *Rutherford Constr. Co. v. Borough of Rutherford*, 6 N.J.Tax 605, 610 (1984). *See* N.J.STAT. ANN. § 2A:84A–5 (West 1992).

The taxpayer meets this burden only when he presents the appellate tribunal with sufficient competent evidence to overcome the presumption of correctness. Competent evidence is that which establishes the true valuation of property at variance with the assessment. *Rodwood Gardens, Inc. v. City of Summit*, 188 N.J.Super. 34, 38, 455 A.2d 1136, 1138 (1982). Such evidence must be definite, positive, and certain in quality and quantity and establish a value different from that determined by the taxing authority. *Aetna Life Insurance Co. v. City of Newark*, 10 N.J. 99, 105, 89 A.2d 385, 387 (1952); *Borough of Rumson v. Peckham*, 7 N.J.Tax 539, 549

---

1. We note that neither party has discussed these issues in their various submissions to the court.

However, they must be considered in rendering an appropriate decision.

(1985); N.J.RULES OF EVIDENCE 9(4), 14 comment; and N.J.STAT.ANN. § 2A:84A–5. Further, New Jersey courts have found that the presumption of correctness is overcome by only those appraisal reports and expert testimony which are "sufficiently detailed to enable the court to determine a property's true value." *Parkway Village Apartments Co. v. Cranford Twp.*, 8 N.J.Tax 430, 436 (1985), *aff'd*, 9 N.J.Tax 199 (N.J.Super.1986) (sufficient evidence to rebut presumption of correctness exists only where experts present comprehensive and detailed analysis together with testimony).

■ While the taxpayer may offer expert testimony on the value of the property, the evidence presented must address the value of the property *for the tax year in question*. Each annual assessment of land is distinct from assessment of prior or subsequent years, and a valuation as of a different year is not controlling even in absence of change in property or subsequent revaluation. *See Aetna Life, supra*, 10 N.J. at 103, 89 A.2d at 387; *Hackensack Water Co. v. Division of Tax Appeals*, 2 N.J. 157, 162, 65 A.2d 828, 830 (1949); *Rodwood Gardens, supra*, 188 N.J.Super. at 38, 455 A.2d at 1138; and *City of East Orange v. Livingston Twp.*, 103 N.J.Super. 109, 113, 246 A.2d 722, 724 (1968). As is noted at page 279 *supra*, under New Jersey law, property is assessed on October 1 of the preceding calendar year. *See B.P.V.M. Development & Urban Renewal Corp. v. City of Camden*, 9 N.J.Tax 490 (1988), *aff'd*, 11 N.J.Tax 95 (1989).

■ However, in *Aetna Life, supra*, it is noted that "tax history is evidential and is often resorted to in order to help clarify and explain the issues presented in controversies of this nature." 10 N.J. at 103, 89 A.2d at 387. Thus, a valuation of a property as of a different tax year may be accorded at least some limited weight.

■ In determining whether to grant AWB the relief which it seeks, this court must apply the rather strict evidentiary standards placed upon taxpayers challenging tax assessments under New Jersey law, as discussed above. In particular, this court must determine whether AWB has rebutted the presumption in favor of the correctness of Camden's assessments and has offered competent evidence to establish the true market value of the Property for each of the years in question. We find that AWB has failed to meet its burdens in connection with the assessments for the 1985–89 tax years for several reasons.

Firstly, AWB failed to overcome the presumption of correctness of Camden's tax assessments. In order to achieve such a result, AWB was obligated to first introduce Camden's valuation of the Property and then offer competent testimony which contradicted that valuation. Although AWB argued that Camden continued to assess the Property at a total value of $325,000, it offered no evidence on what "fair and market" value served as the basis for its objection to Camden's assessments over the years. AWB simply asserts that Camden failed to recognize the "decline" in the true market value of the Property.

Secondly, AWB offered no direct evidence on what the market value of the property was for any of the years from 1985 through 1991. AWB relied on the testimony (1) of Black, that the present value was $590,000; Grasso was deemed to have paid $675,000 for the Property in 1985; and, in light of the pattern of properties in Camden and the declining trend of property over the past few years, the value must be in the $590,000 to $675,000 range for each year; and (2) of Grasso, that he "paid too much" for the Property; that he should not be considered to have "paid" the broker's commission borne by him as part of the "purchase price;" and that property values in Camden declined in recent years. This testimony did not constitute evidence that was "definite, positive and certain in quality and quantity," which is necessary to overcome the assumption of accuracy of the value established by Camden. *Aetna Life, supra*, 10 N.J. at 105, 89 A.2d at 387.

Initially, we question the relevance of the fact that $75,000 of the total amount paid by Grasso for the Property was allocated to the broker's commission. The fact that Grasso undertook to render part of the

compensation in the form of accepting a liability which ordinarily would fall upon the seller is irrelevant to the issue of what he paid in total for the Property. Also irrelevant is Grasso's contention, with 20–20 hindsight, that he paid too much for the Property. Grasso is a very knowledgeable person, most of whose real estate purchases proved to be well-advised. The potential of the Property which he saw in it, and may yet be realized in light of a revitalization of Camden sparked by a construction of the New Jersey State Aquarium, was part and parcel of its value. The best indication of value of the Property in 1985 is that a buyer as prudent and self-interested as Grasso paid consideration totalling $750,000 for it at that time. Therefore, the evidence supports the conclusion that the value of the Property in October, 1985, the date of the assessment for tax year 1986, was $750,000. We therefore find that the range of value of the Property was no less than $590,000 to $750,000 at all pertinent times.

Secondly, we credit Black's contemporary appraisal, which inputs hindsight, less and less as the tax years become farther away from the date of his appraisal. It is difficult to measure the optimism that might have colored an appraisal of the Property in 1988 or 1989, just as it is difficult to know the validity of the pessimism which colors Black's contemporary appraisal.

Notwithstanding the fact that AWB failed to present any definite proof of the market value for any of the tax years at issue except 1992, our own review and calculations of the relevant market value reveals that AWB has met the burden of rebutting the presumption of correctness of Camden's determination of the Property's market value for real estate tax purposes in at least some of the later years. Our calculation of market value based upon the tax ratios submitted into evidence by agreement of counsel indicate that the following market values served as the basis for the 1985 through 1991 assessments of the Property:

| | Total Assessment | Common Level Ratio of Property to Value | Market Value |
|---|---|---|---|
| 1985 | $325,000 | 48.93 | $ 664,214.18 |
| 1986 | 325,000 | 45.17 | 719,504.00 |
| 1987 | 325,000 | 40.58 | 800,887.14 |
| 1988 | 325,000 | 31.47 | 1,032,729.58 |
| 1989 | 325,000 | 30.00 | 1,083,333.00 |
| 1990 | 325,000 | 24.93 | 1,303,650.22 |
| 1991 | 325,000 | 24.60 | 1,321,138.21 |

Based upon our finding that the market values of the Property in 1985 and 1986 were best evidenced by the consideration of $750,000 paid by Grasso for the Property just shortly before the 1986 valuation date, it is clear that the market value of the Property for the years 1985 and 1986 did not exceed the "true market value." Therefore, clearly no adjustment to the assessments for these years are in order.

 On the other hand, the evidence supports the conclusion that AWB is entitled to a re-assessment of the market value

of its Property for tax year 1992 because it offered direct and sufficiently-detailed evidence which clearly rebutted the presumption of correctness of Camden's determination of market value for this year. Black's testimony and report clearly established that the value of the Property is $590,000, far less than the assessed value of $1,305,-700. Further, his testimony on the value of the Property was sufficiently "definite, positive and certain in quality and quantity" to permit the court to arrive at a determination of fair market value. *See Panta-*

*sote, supra,* 100 N.J. at 413, 495 A.2d at 1310; and *Rodwood Gardens, supra,* 188 N.J.Super. at 38, 455 A.2d at 1138. Accordingly, we find that the market value of the Property as of October 1, 1991, the crucial date for 1992 real estate tax assessment purposes, is in fact $590,000, as urged by the Debtor.

■ In connection with the remaining years, the results are more uncertain. It seems unlikely that the Property was worth over $1.3 million in 1990 and 1991 if it was worth only $750,000 in 1985 and 1986 and $590,000 in 1992. However, we note that New Jersey law has established a "common level range" of plus or minus fifteen (15%) percent in evaluating tax ratios, which would excuse an error of seven and a half (7½%) percent in either direction by Camden. *See* N.J.STAT.ANN. § 54:1–35a; *Piscataway Associates, Inc. v. Township of Piscataway,* 73 N.J. 546, 553–54, 376 A.2d 527, 532 (1977); and E. Rosenblum, *Real Property Tax Appeals,* 92 N.J.LAWYER 14, 16 (1980). Applying this "error factor" would allow Camden to assess the Property at $675,956.74 in 1987, $833,974.89 in 1988, and $866,666.67 in 1989. These were "boom" years in the local real estate market and, although we find that the Property has declined in value to $590,000 as of October, 1991, it is not inconceivable that its value could have approached $834,000 and $867,000 in 1988 and 1989, respectively. Clearly, the 1987 value was not very far off the mark, if at all.

■ However, by 1990, even considering the seven and one half (7½%) percent "error factor" in Camden's favor, the value of the Property would have had to have exceeded $1 million to have justified its assessments. During this period, the "boom" period had ended, and values were falling in most local areas. Even after giving every benefit of any doubt to Camden, as New Jersey law requires, we find the assessments for those years cannot be justified. The presumption of correctness is therefore overcome as to the assessments in those years.

■ In situations where the taxpayer has overcome the presumption of correctness, but has not presented sufficient evidence of the correct value for a given tax year, New Jersey courts have held that trial courts must establish value on the basis of the best evidence available to them. *See Rumson, supra,* 7 N.J.Tax at 552–54. As to the assessments in 1990 and 1991, the evidence of the October, 1991, value of the Property of $590,000 assists us in "clarifying" and "explaining" the appropriate value figure. We conclude that $750,000, the high range of value over the entire 1985 through 1992 period, is the most logical figure to require Camden to utilize in reassessing tax years 1990 and 1991. We shall so order.

## D. CONCLUSION

An Order denying any re-assessment of the market value of the Property for tax years 1985 through 1989; granting a re-assessment of the market value of AWB's Property at $750,000 for tax years 1990 and 1991; and establishing the market value of the Property at $590,000 for assessment in tax year 1992 will therefore be entered.