BELT REALTY CORPORATION *vs.* STATE TAX COMMISSION.

Suffolk.    January 4, 1973. — February 7, 1973.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*Taxation,* Urban redevelopment corporation; Corporate excise; Real estate tax: abatement. *Urban Redevelopment Corporation. Words,* "Abatement."

A settlement between a city and a taxpayer in financial difficulty which provided that a reduced sum would constitute full payment of the taxpayer's real estate taxes was not an "abatement" for purposes of calculating the excise tax owed under G. L. c. 121A, § 10, by an · urban redevelopment corporation, the subsequent owner of the property. [55–58]

APPEAL from a decision of the Appellate Tax Board.

*Edward F. Newell* for Belt Realty Corporation.

*Kenneth A. Behar,* Assistant Attorney General, for the State Tax Commission.

QUIRICO, J.    This is an appeal by the Belt Realty Corporation (taxpayer) from a decision of the Appellate Tax Board (board) upholding the action of the State Tax Commission (commission) which had denied the taxpayer's application for abatement of a portion of the 1966 excise imposed by G. L. c. 121A, § 10, inserted by St. 1945, c. 654, § 1, and as appearing in St. 1956, c. 640, § 4.    The board allowed the assessors of the city of

Somerville to intervene in opposition to the taxpayer's appeal.

The taxpayer corporation was organized on August 10, 1966, under G. L. c. 121A, § 3, inserted by St. 1945, c. 654, § 1, as amended through St. 1960, c. 652, § 3, "for the purpose of undertaking and carrying out . . . [an urban redevelopment] project authorized and approved, or to be authorized and approved, by the housing board" of Somerville. Such a corporation is commonly referred to as an "urban redevelopment corporation." Later in 1966 the taxpayer, acting through a straw, purchased 359,000 square feet of land in Somerville formerly owned by the Boston and Maine Railroad (railroad).

General Laws c. 121A, § 10, as appearing in St. 1956, c. 640, § 4, provides in pertinent part that "[f]or a period of forty years after the organization of any such [urban redevelopment] corporation, such corporation and all its real and personal property . . . shall be exempt from taxation and from betterments and special assessments." However, the same statute which grants this exemption from local taxation imposes on such a corporation an excise which "shall be distributed, credited and paid to the city or town where the project of the corporation is located." The excise is computed on a formula involving a number of factors.[1] The only factor involved in the present dispute is the requirement for a determination of the amount of "the average of the assessed valuations of

---

[1] The statutory formula for computation of the excise payable by such a corporation is "an excise equal to the sum of the following: namely, an amount equal to five per cent of its gross income in such preceding calendar year, from all sources, and an amount equal to ten dollars per thousand upon the valuation determined . . . to be the fair cash value as of January first in the year in which the excise becomes payable of all real and tangible personal property of such corporation, . . . provided, that the excise payable in any year shall not be less than the amount which the city or town would receive for taxes, at the rate for such year, upon whichever of the following valuations is the lesser: (a) the valuation upon which the aforesaid amount equal to ten dollars per thousand is computed; or (b) the average of the assessed valuations of the land . . . on the three assessment dates, in the case of land purchased . . . by a corporation organized under this chapter, next preceding the acquisition thereof by such corporation, the assessed valuation for each assessment date being reduced by all abatements, if any."

the land . . . on the three assessment dates . . . next preceding the acquisition thereof by such corporation, the assessed valuation for each assessment date being reduced by all abatements, if any."

Section 10 further provides that notwithstanding the exemption of the real estate of an urban redevelopment corporation from local taxation, the assessors "shall, on or before March first . . ., determine and certify to the state tax commission and to the corporation . . . the fair cash value of such property as of January first in such year," and that "such corporation, if aggrieved by such valuation, may appeal therefrom to the appellate tax board." The assessors filed the required certificates relating to the taxpayer's real estate with the commission for the years 1964, 1965 and 1966. The commission used the assessors' valuations in computing the taxpayer's excise under § 10. The taxpayer appealed to the board contending that the valuations certified by the assessors were incorrect for each of the three years. The board reduced the valuation for 1966 only and the taxpayer now contends in its appeal to this court that the valuations used by the board for 1964 and 1965 are incorrect. The valuations certified by the assessors and used by the commission, those fixed by the board, and those which the taxpayer contends should have been used for each year, together with the resulting three year averages resulting from each set of valuations, are the following:

|  | Fair cash value as certified by assessors | Fair cash value as fixed by board | Fair cash value as claimed by taxpayer |
|---|---|---|---|
| For year 1964 | $211,400.00 | $211,400.00 | $136,775.80 |
| For year 1965 | 305,900.00 | 305,900.00 | 197,917.30 |
| For year 1966 | 305,900.00 | 188,200.00[2] | 188,200.00 |
| 3 year average | $274,400.00 | $235,166.67 | $174,297.70 |

[2] The basis for the board's reduction of the valuation for 1966 is that although the assessors' records show a valuation of $305,900 for that year, the tax bill sent to the taxpayer's straw shows a valuation of $188,200 and a tax computed on that valuation. The record does

The assessors have not appealed from the decision of the board, and the taxpayer is not questioning the valuation of $188,200 fixed by the board for 1966. The assessors have used that same valuation for 1967. The only valuations still in dispute in this appeal are those for 1964 and 1965. In the application of the statutory excise formula to the taxpayer, the taxpayer would be entitled to an abatement only if it could establish that the average of the assessed valuations for the years 1964, 1965 and 1966 was less than $188,200.

The taxpayer contends that the city, the commission and the board failed to reduce the 1964 and 1965 valuations by the amounts of alleged abatements as required by § 10. The facts giving rise to the taxpayer's claim that such valuations were reduced by abatements follow. While the facts are not in dispute, the parties disagree on whether they constituted abatements.

The railroad which formerly owned the real estate in question failed to pay the local taxes thereon for the years 1963 through 1965 with the result that the city took the property for nonpayment of taxes. The total amount of the taxes, interest and fees due by the railroad for those years (including taxes on some personal property) computed in December, 1965, was $1,754,676.24. Because of financial difficulties the railroad asked the city to accept $1,156,800 in full settlement of the total tax obligation. On December 16, 1965, an associate commissioner of corporations and taxation authorized the assessors in writing to accept the reduced amount in full settlement and "to abate the balance of the 1963 thru 1965 tax title account assessed to" the railroad. The city accepted the offered settlement on June 10, 1966. The railroad filed no applications for abatement of taxes for the years 1963 through 1965, and the assessors voted no abatements and made no record of any abatements for this property

not indicate why the 1966 tax bill was issued in the name of the taxpayer's straw who did not acquire the property until after August 10, 1966, rather than to the record owner on January 1, 1966. See G. L. c. 59, § 11, as amended.

for those years. See G. L. c. 59, §§ 59 and 60, as amended.

The taxpayer and the board appear to use identical computations indicating that the amount accepted by the city in full settlement was 64.7% of the total amount due or, stated differently, that it was 35.3% less than the total amount due. From these computations the taxpayer argues that the city in effect granted a 35.3% abatement on the railroad's tax bill, and that each tax and assessment was reduced by 35.3%. The board rejected that argument and entered a decision in favor of the commission. The decision was correct.

The word "abatement" is sometimes used in a general sense which is broad enough to encompass all proceedings which may result in the setting aside or voiding of a tax in whole or in part, in the refund of a tax in whole or in part, or in the reduction, forgiveness or cancellation of a portion of a tax assessed. See Rep. A. G., Pub. Doc. No. 12 (1960) 58–59. Definitions of the word in such a broad sense are not helpful here.

As to taxes on real estate the word "abatement" may be used in relation to applications for abatement of a tax in whole or in part for a variety of reasons. For example, an owner may apply for abatement of taxes on his or its real estate on the basis of any of a number of provisions of G. L. c. 59, § 5, as amended, exempting certain classes of real estate from local taxation, while another owner may apply on the grounds stated in G. L. c. 59, § 59, as amended, that his property is "taxed at more than his just proportion," or is taxed "in excess of its fair cash value."

We are here concerned solely with the meaning of the word "abatements" as it is used in the part of § 10 which refers to "the assessed valuation for each assessment date being reduced by all abatements, if any." It is clear that in this context the word means abatements resulting from reductions in the assessed valuation of real estate. Such a reduction contemplates and involves a determination that the real estate in question was taxed "in excess of its

fair cash value" and that the assessed valuation has been reduced pursuant to an application for abatement under G. L. c. 59, § 59, as amended. There has been no such proceeding or determination here. It is obvious that in this case the railroad sought a reduction in the amount of its tax indebtedness for the sole reason that it was in financial difficulties, and on the record before us it did not at any time claim that its property was assessed in excess of its fair cash value.

The taxpayer's position is not enhanced by its reliance on G. L. c. 58, § 8, as amended through St. 1953, c. 654, § 6, which provides in pertinent part that if "any tax, assessment, rate or other charge [which] has been committed to a collector . . . remains unpaid and the commission is of the opinion that such tax, assessment, rate [or] charge . . . should be abated, it may, in writing, authorize the assessors . . . to abate any part or the whole" thereof and that the assessors "may thereupon make the abatement authorized and enter the same in their . . . record of abatements, making reference in said record to such authorization as the cause or reason for the abatement."

At the outset we note that a question is raised whether the act of one associate commissioner of corporations and taxation by his letter of December 16, 1965, purporting to authorize the assessors to accept a reduced amount in full settlement of the railroad's tax liability for the years 1963 through 1965 qualifies under § 8 quoted above as the act of the three man commission. G. L. c. 4, § 6, Fifth, and c. 14, § 2, as amended. We need not decide this question for the purpose of this case since in any event such action would not constitute an "abatement" within the meaning of that word in G. L. c. 121A, § 10, as amended, because it was not based on any claimed excessive valuation of the railroad's real estate. The holding in *Codman* v. *Assessors of Westwood*, 309 Mass. 433, the only case cited in the taxpayer's brief, does not support a contention that the action of the associate commissioner and of the assessors in settling the railroad's

tax liability for 1963 through 1965 constituted or resulted in a reduction of the assessments for those three years.

The decision of the board is affirmed.

*So ordered.*