In re ST. JOHN'S NURSING HOME, INC. d/b/a Blaire House Long Term Care Facility of New Bedford, f/k/a Casa Seville, Debtor.

ST. JOHN'S NURSING HOME, INC., Appellant,

v.

The CITY OF NEW BEDFORD, Appellee.

Civ. A. No. 93–11405–DPW.

United States District Court, D. Massachusetts.

May 19, 1994.

Mark J. Witkin, Bloom & Witkin, Boston, MA, for appellant.

Burton Peltz, Law Offices of Michael M. Brasman, Boston, MA, for appellee.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

William Gabovitch, Trustee of St. John's Nursing Home, Inc., appeals from a decision of the Bankruptcy Court denying his motion to reassess the value of certain of the estate's real property, redetermine the associated real estate tax liability, and order a refund of any overpayment of those taxes. Bankruptcy Judge Feeney, recognizing—but declining to follow—a contrary view expressed in other litigation by Bankruptcy Judge Queenan, ruled that, because the representatives of the bankruptcy estate had failed properly to pursue abatements under state law, the court lacked jurisdiction to render such a determination. As an alternative grounds, she concluded that it was appropriate to abstain from an adjudication of the issues. I find Judge Feeney's determination well-founded on the law and as an exercise of discretion. I will affirm her decision.

### I.

In December 1981, the Debtor, owner and operator of a 123–bed nursing home in New Bedford, filed a Chapter 11 petition. Thereafter the Debtor operated as a debtor-in-possession until the appointment in June 1990 of Gabovitch as Trustee. In March 1982 the City of New Bedford filed with the Bankruptcy Court a proof of claim against the Debtor for prepetition unpaid real estate taxes and property charges totalling $38,-520.61. The City duplicated this proof of claim in March 1992.

From the operating income of the nursing home, local property taxes were paid to the City of New Bedford as assessed annually pursuant to M.G.L. ch. 59, §§ 2–94.[1] As relevant here, the Debtor-in-Possession/Trustee paid in full the following such taxes:

| Fiscal Year | Assessment | Tax Rate | Tax |
| --- | --- | --- | --- |
| 1988 | 1,767,300 | 35.99 | 63,605.13 |
| 1989 | 2,644,500 | 20.55 | 54,344.18 |
| 1990 | 2,644,500 | 20.79 | 54,979.15 |
| 1991 | 2,644,500 | 20.57 | 54,397.37 |
| 1992 | 2,709,800 | 22.69 | 61,485.36 |

On November 13, 1992, the Trustee filed a motion with the Bankruptcy Court asserting that the assessments on which these taxes were based were inflated, and that a proper assessment would result in a combined tax obligation for the years in question of $122,-254.19 less than was paid. The Trustee accordingly moved pursuant to 11 U.S.C. § 505 that the Bankruptcy Court reassess the Debtor's tax liability for those years and order a refund of any taxes found overpaid. The Trustee also moved that the Bankruptcy Court assess the Debtor's property tax liability for Fiscal Year 1993, for which a tax bill had not yet been received and taxes had not yet been paid.[2]

The City of New Bedford opposed the motion, contending that because neither the Trustee nor the Debtor ever filed an application for abatement with the City for the years in question, the Bankruptcy Court was precluded under 11 U.S.C. § 505 from assessing the Debtor's putative tax liability or ordering a refund of taxes paid. Additionally, the City asserted that a determination by

---

1. The actual tax is "based upon the assessor's determination of the fair market value of the subject property." *In re St. John's Nursing Home, Inc.*, 154 B.R. 117, 118 (Bankr.D.Mass. 1993) (citing M.G.L. ch. 59, §§ 11 and 38).

2. In their briefing, the parties indicate that the 1993 taxes have since been paid and no abatement has been sought regarding them. *See, e.g.,* Appellant's Brief at 3. Consequently, the legal issues presented in respect to those taxes are now indistinguishable from the issues presented by the taxes for 1988 through 1992.

the Bankruptcy Court of the Debtor's tax liability for 1993 would be premature.

Denying the motion, the Bankruptcy Court ruled that as a prerequisite to review of a bankruptcy estate's postpetition entitlement to a refund of taxes paid, § 505 requires that the trustee "properly request" a refund from the appropriate governmental unit, which under Massachusetts law entails the timely filing of a tax abatement application. Because no such application had been filed in the instant case, the court found it lacked jurisdiction to assess the Debtor's tax liability and order a refund for any of the years in question. Alternatively, the court found it appropriate to abstain from adjudication of the tax dispute, because a Chapter 11 plan providing for payment in full of all claims in the twelve-year-old case had been confirmed and, consequently, only the Debtor stood to benefit from a Bankruptcy Court ruling on the tax refund question.

## II.

### –A–

In pertinent part, the statute provides:

§ 505. Determination of Tax Liability

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction

before the commencement of the case under this title; or

(B) any right of the estate to a tax refund, before the earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.

The applicability of § 505 to the Massachusetts real estate taxation scheme was recently considered by Chief Judge Queenan in *In re Ledgemere Land Corp.*, 135 B.R. 193 (Bankr.D.Mass.1991). There, as here, debtors sought refunds of certain real estate taxes, some for which abatements had been sought (although no appeal was taken), while for others "the time for requesting abatements ... ha[d] long since passed." *Id.* at 198.[3] Judge Queenan found failure of the debtors to have made a prior refund request as otherwise required by § 505(a)(2)(B) no bar to jurisdiction in that case on two grounds.

First, recurring to legislative history, he determined that "[w]here, as here, refunds are sought as an offset or counterclaim to the claim of the taxing authority, no refund claim need first be made." *Id.* (citing 124 Cong. Rec., H 11110–11 (daily ed. Sept. 28, 1978), S17426–28 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and Sen. DeConcini)). While there may be support for this position,[4] I need not consider its application here because the appellant before me does not purport to seek an offset or counterclaim against the City's claim for prepetition taxes, but rather requests a straightforward refund of postpetition taxes. As to this ground, therefore, *Ledgemere* may be distinguished.

Judge Queenan's second ground, however, is directly relevant to this case. Interpreting

---

**3.** M.G.L. ch. 59, § 59 sets forth the various time limits within which an aggrieved taxpayer may apply for an abatement. *See* note 7, *infra*. It is not contested that the relevant time limits were not met here.

**4.** *See, e.g.*, 124 Cong.Rec. H 11095, H 11110–11111 (Sept. 28, 1978) ("[t]he House amendment adopts the rule of the Senate bill that the bankruptcy court can, under certain conditions, deter-

mine the amount of tax refund claim by the trustee. Under the House amendment, if the refund results from an offset or counterclaim to a claim or request for payment by the [IRS] or other tax authority, the trustee would not first have to file an administrative claim for refund with the tax authority"); 3 Collier on Bankruptcy § 505.04 (15th ed. 1993) (citing same legislative history in support of same proposition).

the requirement in § 505(a)(2)(B) that a refund be "properly" requested, Judge Queenan found

> this to refer to a request for a refund in accordance with the procedure prescribed under other applicable law for such a request. There is no separate administrative procedure in Massachusetts for the refund of local taxes as there is for federal income taxes. The only way to contest real estate taxes in Massachusetts is to file an application for abatement of the taxes. The real estate owner may do so whether or not he has paid the taxes.

*In re Ledgemere,* 135 B.R. at 198. Evidently, based on this observed difference between the federal and Massachusetts schemes for administering tax disputes, and because a Massachusetts taxpayer can apply for abatement under M.G.L. ch. 59, § 59 even without having paid taxes, Judge Queenan concluded that a refund in Massachusetts simply could not be "properly" requested, and that a debtor's failure to have earlier sought abatement therefore could not be a bar to jurisdiction.

▉ I do not find this reasoning compelling. Rather, I adopt Judge Feeney's conclusions that 1) "the Massachusetts abatement procedure is a refund mechanism—indeed the only refund mechanism", *In re St. John's,* 154 B.R. at 125, and 2) "[t]he adverb 'properly' connotes correctness and dictates conformity with the governmental unit's procedures", *id.* at 125, which in this case in turn refers to the abatement procedure set out in M.G.L. ch. 59, § 59.

There is nothing either in the framework of the statute or in a common understanding of the word "properly" that compels Judge Queenan's conclusion that the word as used in that context has as a referent analogous procedure under other (read: federal) law. Such an argument might be tenable if the statute required that the *procedure* be "proper", rather than the request. The same might be said if the provision focused exclusively on the refund of federal taxes. Nowhere does the statute so qualify the type of tax refunds under contemplation, however.

Hence, under the statute as written, if Massachusetts law had a provision entitled "Tax Refund Request Procedure" that required as a first step an abatement application be filed, it seems clear that one who failed to file such an application would thus have failed to "properly request[ ]" a tax refund in Massachusetts. The "plain meaning" of § 505(a)(2)(B) permits of no other sense. Accordingly, if the provisions of M.G.L. ch. 59 can be said to encompass a tax refund procedure,[5] it follows that § 505(a)(2)(B) here requires compliance with its terms. I turn now to test this proposition.

There is no provision in M.G.L. ch. 59 identified by the precise words, "Refund Procedure". The captions of most of the relevant provisions focus rather on the word "abatement." I do not find this determinative, however, for as observed by the Supreme Judicial Court,

> [t]he word "abatement" is sometimes used in a general sense which is broad enough to encompass all proceedings which may result in the setting aside or voiding of a tax in whole or in part, *in the refund of a tax* in whole or in part, or in the reduction, forgiveness or cancellation of a portion of a tax assessed. [citation omitted].

*Belt Realty Corp. v. State Tax Comm'n,* 363 Mass. 52, 56, 292 N.E.2d 679 (1973) (emphasis supplied). Moreover, as Judge Feeney and the parties observe, the word "refund" appears several times in relevant provisions of the chapter.[6] To ascertain more clearly whether the chapter provides for a refund request procedure, therefore, an examination of the substance and interaction of the provisions is warranted.

That a refund of property tax is generally contemplated by M.G.L. ch. 59 is evidenced by § 58A, which is entitled "Minimum Abatement or Refund of Property Tax" and provides that "[n]o abatement or refund of property tax ... shall be granted or paid in an amount less than one dollar." M.G.L. ch. 59, § 58A. There follows no provision explicitly establishing the procedure by which one

---

**5.** M.G.L. ch. 59 addresses the "Assessment of Local Taxes" under Title IX, which covers "Taxation".

**6.** *See* §§ 58A, 64 and 69. *See also* discussion *infra.*

might request a "refund." However, § 59 sets out the procedure whereby an aggrieved taxpayer may apply for an "abatement",[7] and § 69 (entitled "Reimbursement; interest") then provides that if the tax abated "has been paid, [the taxpayer shall] be reimbursed by the town to the amount of the abatement allowed ..." M.G.L. ch. 59, § 69.[8] The next sentence in the provision makes plain that to "be reimbursed" as used here is synonymous with being given a "refund", because it states that "[n]o *refund* shall be paid on account of an abatement when there remains an outstanding balance of the tax to which the abatement relates ..." *Id.* (emphasis supplied).

Section 64, which establishes the procedure by which one may appeal an assessor's refusal to abate a tax, provides further evidence that applying for an abatement under § 59 is the mechanism by which one obtains a refund of local taxes in Massachusetts. In pertinent part, it states that "[i]f upon hearing ... the appellate tax board finds that the complainant is duly entitled to an abatement, it may grant him such reasonable abatement as justice may require, and *shall enter an order ... to refund* said amount, if the tax sought to be abated has been paid ..." M.G.L. ch. 59, § 64 (emphasis supplied).

■ The injunctive character of the underscored phrase makes clear that one who has applied and qualifies for an abatement of taxes paid *will* receive a refund. Because

applying for abatement under § 59 is thus the mechanism by which one *obtains* a local tax refund in Massachusetts, it follows that one *seeking* such a refund is obliged to request it by applying for a § 59 abatement. Following the plain language of both the bankruptcy statute and the state abatement provision, I conclude that the jurisdictional condition in 11 U.S.C. § 505(a)(2)(B) that one "properly request[ ]" a refund requires in this case the filing of an application for abatement pursuant to M.G.L. ch. 59, § 59.

–B–

The case law apart from *Ledgemere* does not persuade me that the conclusion which follows from the plain meaning of the statutory provisions is in error. The appellant relies on several cases in addition to *Ledgemere* to support its position. As the following review illustrates, however, these cases are distinguishable in that they do not involve the issue of refunding taxes.

*In re New England High Carbon Wire Corp.*, 39 B.R. 886 (Bankr.D.Mass.1984), held that the Bankruptcy Court had jurisdiction under the statutory predecessor to § 505, § 2a(2A) of the former Bankruptcy Act,[9] to hear and determine the amount of local taxes due and owing for certain pre- and postconfirmation fiscal years, notwithstanding the failure of the debtor to have exhausted its administrative remedies by seeking an abate-

---

7. M.G.L. ch. 59, § 59, relevantly entitled "Abatements", in pertinent part provides:

> A person upon whom a tax has been assessed or the administrator of the estate of such person ... if aggrieved by such tax, may, except as hereinafter otherwise provided, on or before October first of the year to which the tax relates or, if the tax is other than a poll tax, and the bill or notice was first sent after September first of such year, on or before the thirtieth day after the date on which the bill or notice was so sent, apply in writing to the assessors, on a form approved by the commissioner, for an abatement thereof, and if they find him taxed at more than his just proportion or upon an improper classification, or upon an assessment of any of his property in excess of its fair cash value, they shall make a reasonable abatement....

8. It need not be belabored that the evident conditioning of a refund in this provision upon the tax

having been paid is no more than a reflection of the fact that what has not been paid cannot be refunded. In this regard, I note that Judge Queenan's implicit objection that § 59 cannot be a refund mechanism because an abatement thereunder may be applied for whether or not one has paid taxes is not telling: although one may apply for an abatement as such without having paid taxes, such an application can only operate as a means to a refund where one has already paid the taxes at issue.

9. Section 2a(2A) provided a bankruptcy court with jurisdiction to:

> [h]ear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction....

*High Carbon Wire*, 39 B.R. at 888.

ment pursuant to M.G.L. ch. 59, § 59.[10] In so ruling, the court found that recent changes to the Bankruptcy Act and sound policy considerations for protecting creditors confirmed that Congress had "endowed [courts of bankruptcy] with jurisdiction to hear and determine questions relating to *unpaid* taxes when these questions were not contested pre-filing." *High Carbon Wire,* 39 B.R. at 889 (emphasis supplied).

As the emphasis makes clear, however, at issue was not the question of refunding taxes already paid, but rather the proper assessment of *unpaid* taxes. In § 505(a)(2)(B), Congress has expressly excepted from an otherwise broad jurisdictional grant cases where the taxes have already been paid and a refund is sought. Thus the court in *High Carbon Wire* itself noted that a circumstance under which "a bankruptcy court may not hear and determine the proper tax due and owing by a debtor is when the tax has been paid ..." *Id.* The essential distinction was recently identified by the Tenth Circuit:

> [t]he law regarding claims for tax refunds is unusually clear, and does not appear to admit any exceptions: "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax ... until a claim for refund or credit has been duly filed with the Secretary ..." 26 U.S.C. § 7422(a) [ ]. More specifically, the bankruptcy court may not determine
>
> > any right of the estate to a tax refund, before the earlier of—(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or (ii) a determination by such governmental unit of such request.
>
> 11 U.S.C. § 505(a)(2)(B). Thus, the government does not waive sovereign immuni-

ty in a suit for a tax refund until presented with an administrative claim which it has either denied or ignored.... These rules are nonwaivable jurisdictional requirements. *See United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990); [other citations omitted].... Simply put, no claim, no refund.

*In re Graham,* 981 F.2d 1135, 1138 (10th Cir.1992).[11]

That a jurisdictional distinction might thus be made between cases where disputed funds are already in the government's possession and those where the monies have yet to be assessed or collected is not remarkable. Indeed, it is fully consonant with a host of legal formulations outlining the particular constraints that come into play where a governmental unit's financial liability is at issue, not least among which is the requirement that direct and adequate notice of such a claim be given to the appropriate administrative office prior to any court action. Section 505(a)(2)(B) is thus designed to "giv[e] the taxing authorities time to act on a refund request." Benjamin Weintraub and Alan N. Resnick, *Bankruptcy Law Manual,* ¶ 5.09 (3d ed. 1992). Not surprisingly, the abatement application procedure required under M.G.L. ch. 59, § 59, which in this case spells out the requisite time periods, is described as having a similar function, i.e., "comparable to a 'notice,' the purpose of which was 'to give information to an official board representing a town, *in reference to a possible pecuniary liability.*'" *Bd. of Assessors of Town of Brookline v. Prudential Ins. Co. of America,* 310 Mass. 300, 308, 38 N.E.2d 145 (1941) (quoted case omitted) (emphasis supplied).[12]

With these principles in mind, the remainder of the cases relied upon by the appellants are generally distinguishable in that they do

---

**10.** The court found no reason to treat differently in this regard tax liabilities accrued after confirmation from those accrued prior. *High Carbon Wire,* 39 B.R. at 890.

**11.** I recognize that *Graham,* as well as several other cases cited herein, involve compliance with federal statutory requirements for the refund of federal taxes. The instant appeal, by contrast, is concerned with state tax practice. Nevertheless, this distinction makes no difference in the analysis of what is required under § 505(a)(2)(B).

**12.** In this regard, I note that, contrary to Judge Queenan's suggestion, § 505(a)(2)(B) does *not* "fail[ ] to refer to any procedure or time limit other than the 120 day refund procedure," *In re Ledgemere,* 135 B.R. at 198. The requirement that a refund request be "properly request[ed]" has as a referent the time limits set forth in the relevant provisions of M.G.L. ch. 59. The extent to which these time limits are precisely binding in the instant case is discussed *infra.*

not involve the seeking of tax refunds and so do not trigger the jurisdictional exception carved out by § 505(a)(2)(B). *See, e.g., In re East Coast Brokers & Packers, Inc.,* 142 B.R. 499 (Bankr.M.D.Fla.1992) (debtor's contest of assessment of unpaid taxes sought by claimant reviewable despite lapse of time for such contest under Florida law; § 505(a)(2)(B) not discussed); *In re 499 W. Warren Street Assocs., Ltd. Partnership,* 143 B.R. 326 (Bankr. N.D.N.Y.1992) (debtor's tax liability for unpaid prepetition taxes reviewable despite debtor's failure to pursue state remedies for challenging same; § 505(a)(2)(B) not discussed).[13]

A somewhat closer fact pattern appears in *In re AWB Assocs., G.P.,* 144 B.R. 270 (Bankr.E.D.Pa.1992); the reasoning, however, proves no more persuasive. There, the debtor had already paid many of the disputed taxes prepetition. Animating the suit, however, was not a request for a refund as in the instant case, but rather a motion to determine the debtor's outstanding tax liability to the claimant arising from other years in which it had not paid taxes. *Id.* at 273, 275 (taxes mostly paid from 1985 to 1989, but not from the end of 1989 through 1992). With the matter thus arguably in the nature of a counterclaim or offset, the court found that it had jurisdiction to review the tax assessments for all the years in question, notwithstanding the debtor's wholesale failure to invoke state law procedures for contesting such liability. *Id.* at 278. In so ruling, the court did not even mention, much less consider, § 505(a)(2)(B), relying instead on "all of the other authority on this point, which concludes that procedural requirements are preempted by the Bankruptcy Code ..." *Id.*

 More directly on point with regard to the refund issue, and supplying a sounder resolution, is *In re Millsaps,* 133 B.R. 547 (Bankr.M.D.Fla.), *approved,* 138 B.R. 87 (M.D.Fla.1991). There the court found that § 505(a)(2)(B) specifically limited its jurisdiction where a refund was in issue. In *Millsaps,* Chapter 7 debtors sought, *inter alia,* relief from the assessment, lien, levy, seizure and sale of their home. Because the only practical relief available was "a refund of the taxes paid through the sale and satisfaction process," *id.* at 553, the court treated the debtors' action as tantamount to a tax refund request. Finding that no such refund request had ever been filed with the Secretary of the Treasury as required by 26 U.S.C. § 7422(a), the court concluded under both that statute and the jurisdictional limitation of § 505(a)(2)(B) that "[a]bsent the satisfaction of that condition, this court as well as any other court is precluded from entertaining a refund action." *Id.* Cf. *Texaco Inc. v. Louisiana Land and Exploration Co.,* 113 B.R. 924, 928, 938–39 (M.D.La.1990) (exhaustion requirement of § 505(a)(B)(2) for reimbursement claim satisfied under Louisiana law either by filing claim with the Board of Tax Appeals or with the state Department of Revenue). I concur in the thrust of *Millsaps,* implicit in *Louisiana Land,* that the refund procedures available against a taxing authority must be pursued as a condition to bankruptcy jurisdiction regarding refund disputes.

### III.

 The *Millsaps* court also found that the debtors' failure to have earlier filed a request for a refund with the Secretary of the Treasury "cannot be cured by filing a claim for a refund now." *Id.* at 553.[14] This

---

13. The court in *499 W. Warren Street,* 143 B.R. at 328, itself relied on *Ledgemere.*

14. An analogous approach is found in *In re Qual Krom South, Inc.,* 119 B.R. 327 (Bankr.S.D.Fla. 1990), where the debtor had deposited funds for payment to the I.R.S., but these had not yet been disbursed due to the debtor's dispute regarding the amounts owed. Noting that the debtor had failed to show proof "of a requested refund or credit during the [ ] statutory period [prescribed by 26 U.S.C. § 6511]," *id.* at 329, the court held that the period of limitation for refund filing had

run prior to petition filing and so found the "debtor's claim for a refund [ ] time barred." *Id.* at 330. The case thus involved a quasi-refund claim and, in passing, the court noted § 505(a)(2)(B). However, rather than rely explicitly on the requirements of § 505(a)(2)(B), the court chose instead to emphasize the statute's reference to a "tribunal of competent jurisdiction", reading it to mean that "a viable claim or cause of action, not otherwise time barred, must exist at the time of the filing of the bankruptcy." *Id.* at 329.

frames the timeliness issue for consideration here, namely, to what extent the time limits for filing for abatement under M.G.L. ch. 59—compliance with which is otherwise considered "a necessary prerequisite to a judicial challenge under Massachusetts law", *High Carbon Wire,* 39 B.R. at 889[15]—amount to a statute of limitations proscribing a bankruptcy court's jurisdiction to review a Massachusetts tax refund request. In a recent unpublished[16] opinion, *In re Continental Airlines,* 8 F.3d 811 (3d Cir.1993) (table), *cert. denied* —— U.S. ——, 114 S.Ct. 1297, 127 L.Ed.2d 650 (1994), the Third Circuit effectively adopted this position and overturned the published District Court[17] and Bankruptcy Court[18] opinions to the contrary on this point. The Court of Appeals held that because "Continental failed to comply with procedural requirements contained in the Denver Code which operate to prohibit recovery of use tax paid during the refund period ... [it] is not entitled to a use tax refund or credit for the refund period months." *In re Continental Airlines,* No. 93–7088, slip op. at 23 [8 F.3d 811 (Table) ] (3d Cir. Sept. 20, 1993).

I find the "plain meaning" of the injunction in § 505(a)(2)(B) that a refund be "properly request[ed]" to require compliance with all the applicable refund procedures—in this case, those outlined in M.G.L. ch. 59; I find nothing in either of these statutes to suggest that an exception might be made for the time limits established therein. As the Supreme Judicial Court has observed regarding the generally binding nature of the time limits in M.G.L. ch. 59:

> The provision for an application is procedural.... It is the method by which the statutory proceeding is begun. The proceeding must be begun by a proper application within the period fixed by the statute, which is somewhat like a short statute of limitations, though "the time within which the application is to be made is not a mere matter of limitation but is an integral part of the right, and the failure to apply within the prescribed time destroys the right." (quoted case omitted).

*Board of Assessors of Town of Brookline v. Prudential Ins. Co. of America,* 310 Mass. 300, 308, 38 N.E.2d 145 (Mass.1941).[19] Because M.G.L. ch. 59 establishes certain time constraints on a refund action, and § 505(a)(2)(B) plainly requires "proper" compliance with M.G.L. ch. 59, I conclude as a general matter that a bankruptcy court lacks jurisdiction to review a taxpayer's claim for a refund of taxes where that claim was not timely filed pursuant to M.G.L. ch. 59.

---

**15.** Specifically at issue in *High Carbon Wire* was the thirty day window after the mailing of a tax bill within which one can apply for an abatement under M.G.L. ch. 59, § 59.

**16.** I am constrained to note disapprovingly the difficulties presented by the failure of the Third Circuit to publish its opinion reversing the District Court and the Bankruptcy Court in *Continental Airlines.* The only opinions in that case now generally accessible are the lower court opinions found erroneous by the Court of Appeals in an unpublished document. The opaque tabular report in F.3d that the District Court opinion was "affirmed in part and reversed in part" does not inform the bench or bar which part is which. At considerable cost to judicial efficiency, the clerk's office of the nonpublishing court must be contacted to obtain a copy of the unpublished opinion. In short, the otherwise laudable effort to reduce the proliferation of judicial opinions larding the reporting systems here has had the perverse effect of making the decision-making process modestly more laborious rather than less so. The experience has underscored the prudence of the rule in the District of Columbia Circuit providing for the publication of any appellate court opinion when the decision reverses a published District Court opinion. U.S.C.S.Ct.App.D.C.Cir.R. 14(a)(6) (1993).

**17.** *In re Continental Airlines,* 149 B.R. 76 (D.Del. 1993).

**18.** *Matter of Continental Airlines,* 138 B.R. 430 (Bankr.D.Del.1992).

**19.** This treatment of what is superficially a statute of limitation as a matter integral to the right is an aspect of governmental sovereignty. *Cf. U.S. v. Dalm,* 494 U.S. 596, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990), where the Supreme Court has recently stated:

> Under settled principles of sovereign immunity, "the United States, as sovereign, 'is immune from suit, save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" [quoted cases omitted]. A statute of limitations requiring that a suit against the Government be brought within a certain time period is one of those terms.

*Id.* at 608, 110 S.Ct. at 1368.

## IV.

Finally, I decline the appellants' invitation to distinguish between taxes paid by the debtor and those paid by the trustee. This conclusion is somewhat presaged by *Millsaps*, where the court found the debtors altogether time-barred from seeking a refund of taxes they themselves had paid postpetition. The instant case is distinguishable in that here the *trustee* is seeking a refund of taxes paid both by himself and by the debtor as debtor-in-possession. However, as a general proposition, a trustee and debtor-in-possession stand much in the same shoes. *See* 11 U.S.C. § 1107; *California State Bd. of Equalization v. Sierra Summit, Inc.,* 490 U.S. 844, 850 n. 5, 109 S.Ct. 2228, 2223 n. 5, 104 L.Ed.2d 910 (1989) (when debtor is permitted to remain in possession, duties of a trustee may be imposed on the debtor-in-possession); *Matter of Urrutia,* 137 B.R. 563, 566 (D.Puerto Rico 1990) (in Chapter 11 case, "debtor becomes a 'debtor in possession' and as such assumes the duties and responsibilities of the trustee"). I see no grounds for making an operative distinction here.

The appellant contends that even if § 505(a)(2)(B)(i) is found to apply to the tax years following the Trustee's appointment—i.e., 1990 and after—it should not apply to the relevant years prior thereto, because § 505(a)(2)(B)(i) refers only to requests as made by a *trustee* and so has no bearing on the obligations of a debtor-in-possession. *See* Appellant's Brief at 5, 6. *Compare In re Millsaps,* 133 B.R. at 553–54 (since both were otherwise precluded, court found it unnecessary to determine whether jurisdiction would lie for refund claim by debtor as opposed to a trustee). I find this argument unpersuasive. While there may be occasions where an operative distinction between a trustee and a debtor-in-possession is appropriate, the two are "akin [ ] for many purposes." *In re Callan,* 1992 WL 354859 at *2 (Bankr.D.Alaska). *See also* 11 U.S.C. § 1107 (debtor-in-possession has generally all the rights and duties of a trustee under Chapter 11); *In re Qual Krom South, Inc.,* 119 B.R. 327, 329 (Bankr.S.D.Fla.1990) (same).

In this regard I note that Judge Queenan refers generally to the obligation of "the estate representative" under § 505(a)(2)(B) to properly request a refund. *In re Ledgemere,* 135 B.R. at 198. This would include a debtor-in-possession as well as a trustee. The appellant discloses no authority or rationale to cabin a reading of the statute's use of the word "trustee" more narrowly, nor do I find any. This is not a case where a debtor's prepetition failure to pursue certain claims can be said to have jeopardized the rights of his or her creditors. All of the taxes here at issue were paid postpetition; moreover, a plan providing for payment in full of all claims has been confirmed. Hence, I need not reach the issue decided in *In re Qual Krom*, namely, whether the filing of bankruptcy revives the debtor's right to file for a tax refund where that right had lapsed prepetition. (The *Qual Krom* court found it did not).

I conclude that where an estate representative seeks to dispute taxes that were levied following the fundamental juridical changes wrought by a Chapter 11 filing, the representative is fully bound by the procedural requirements that otherwise govern such a challenge. Where, as here, a plan for payment of all claims has been confirmed, there can be no creditor protection rationale to override the concern for adequate administrative notice discussed above.[20] Accordingly, the appellant's motion seeking a refund of taxes was properly denied by the Bankruptcy Court.

## V.

Having generally affirmed the Bankruptcy Court's decision on the merits, I will discuss briefly my determination to affirm also on the alternative abstention grounds.

As is evident from the terms of the statute, § 505(a)(1) gives a bankruptcy court discretionary authority to determine the tax liability of a debtor, subject to the limitations set forth in paragraph (2). I find no abuse of that discretion in Judge Feeney's alternative ruling to abstain from adjudicating this mat-

---

**20.** *Cf. In re Ledgemere,* 135 B.R. at 198 (noting goal of "broad jurisdictional grant" in § 505 is to "prevent[ ] prejudice to creditors by reason of the debtor's default").

ter on the grounds that a plan providing for payment in full of all claims had been confirmed and therefore only the Debtor stood to benefit from a ruling on the merits.[21] *See, e.g., In re Swan,* 152 B.R. 28, 30 (Bankr. W.D.N.Y.1992) ("discretion should not be exercised where the unsecured creditors derive no benefit from the remedy under Section 505"); *In re El Tropicano, Inc.,* 128 B.R. 153, 161 (Bankr.W.D.Tex.1991) (Congress in § 505 "was primarily concerned with protecting creditors from the disposition of the estate's assets which could result if the creditors were bound by a tax judgment which the debtor ... did not contest").

Judge Feeney properly looked to the following as factors to consider:

1. the complexity of the tax issue to be decided;

2. the need to administer the bankruptcy case in an orderly and efficient manner;

3. the burden on the Bankruptcy Court's docket;

4. the length of time required for trial and decision;

5. the asset and liability structure of debtors; and

6. any prejudice or potential prejudice to both the debtor and taxing authority.

*In re St. John's,* 154 B.R. at 125–26 (citing *In re Galvano,* 116 B.R. 367, 372 (Bankr. E.D.N.Y.1990)). Her evaluation of those factors was well within the range of her informed discretion in this matter and provides an appropriate alternative ground for affirmance.

### CONCLUSION

For the foregoing reasons, the ruling of the Bankruptcy Court is hereby AFFIRMED.

---

21. In its reply brief, the Trustee argues that any suggestion of prejudice befalling the City should this matter be adjudicated is unfounded. *See* Reply Brief at 10. However, given that "no other pending matters stand in the way of closing this twelve year old case," *In re St. John's,* 154 B.R. at 126, I find that prejudice to the settled expectations of the participants—including the City—in this otherwise closed bankruptcy proceeding would surely arise should this case be continued.