**In re EUA POWER CORPORATION n/k/a Great Bay Power Corporation, Debtor.**

**GREAT BAY POWER CORPORATION and Official Bondholders' Committee of EUA Power Corporation n/k/a Great Bay Power Corporation, Plaintiffs,**

v.

**TOWN OF SEABROOK, NH, Town of Hampton, NH and Town of Hampton Falls, NH, Defendants.**

Bankruptcy No. 91–525–JEY.

Adv. No. 95–1018–JEY.

United States Bankruptcy Court, D. New Hampshire.

April 26, 1995.

Frank W. Getman Jr., Hale and Dorr, Boston, MA, for plaintiffs.

Daniel J. Callaghan, Devine, Millimet PA, Manchester, NH, Christopher T. Katucki, Goodwin, Proctor & Hoar, Boston, MA, for defendants.

Nicholas J. Scobbo Jr., Ferriter, Scobbo, Sikora, Singal, Caruso & Rodophele, P.C., Boston, MA, creditor.

## MEMORANDUM OPINION

JAMES E. YACOS, Chief Judge. .

The issue presented is whether the bankruptcy court has jurisdiction to determine whether the debtor should receive a tax refund or credit for pre-petition and post-petition property taxes which have been paid notwithstanding the debtor and/or the trustee's [1] failure to comply with state procedural requirements regarding filing a refund request. The parties agree that the property taxes assessed for the years in question were paid in full and on time. They also agree that no request for tax abatement was made within the time permitted by state law[2]. Where they disagree is the legal significance of the failure to timely file a refund request.

The challenged taxes were assessed between 1990 and 1993 by the New Hampshire towns of Seabrook, Hampton and Hampton Falls in relation to the debtor's percentage ownership interest in the Seabrook Nuclear Power Station[3]. The debtor is one of twelve New England utility companies who jointly own the Seabrook Station as tenants in common[4]. Each year, the towns assess the value of the real property and improvements related to the portion of power station located in their respective town for real estate tax purposes. That value is used as the basis to determine the real estate tax due which is then allocated among the joint owners based upon their percentage interest in the power station. Each of the joint owners of the Seabrook Station receive a separate yearly property tax bill for their portion of the property tax due.

EUA Power Corporation n/k/a Great Bay Power Corporation owns a 12.1324% interest in the power station. Great Bay Power sells its percentage interest in the electricity generated by the power station to the wholesale market. In contrast, the majority of the remaining joint owners sell their percentage interest of the electricity generated to the retail market for prices that exceed prices in the wholesale market. In determining the amount of the yearly tax bill, each town values the property as a whole then bills the taxes to each joint owner based on their straight percentage interest in the station not accounting for any possible variance in the value of each joint owner's interest due to the difference in their market base. Until the filing of the present § 505 complaint for determination of taxes, neither the debtor or the Bondholders Committee has ever challenged this method of allocation[5].

EUA Power Corporation n/k/a Great Bay Power Corporation filed a petition for relief

---

1. The refunds are requested for the 1990, 1991, 1992 and 1993 taxes paid. The New Hampshire tax year begins April 1 and concludes March 31 of the following year. N.H. RSA § 76:2. This bankruptcy was filed in February of 1991, thus most of the taxes in question were assessed and paid during the administration of the bankruptcy case.

2. New Hampshire state law requires written requests for abatement of taxes to be filed within 2 months of the "Notice of the Tax" which is the last date of the mailing of the final tax bill by the town. N.H.Rev.St.Ann. § 76:16 (1994).

3. Although the power station is primarily located in Seabrook, New Hampshire, a portion of the power station is located in Hampton and Hampton Falls. The towns assess a property tax each year for the portion of the power station located in their respective town.

4. The debtor's ownership of the Seabrook Interest is governed by a Joint Ownership Agreement dated May 1, 1983, as amended.

5. The Court also finds from this record that nothing prevented the debtor in possession and/or the Bondholders Committee from complying with the 505 proviso other than concern about upsetting the joint owners during the confirmation process.

under chapter 11 of the Bankruptcy Code in February of 1991. The Bondholders Fifth Amended Plan of Reorganization was confirmed on March 3, 1993. There was a subsequent modification of the plan confirmed May 5, 1994 and an amendment to the modified plan confirmed November 4, 1994. The plan has been consummated and the estate has been vested in the reorganized debtor pursuant to § 1147 of the Bankruptcy Code.

On February 8, 1995, Great Bay Power Corporation and the Official Bondholders' Committee of EUA Power Corporation (n/k/a Great Bay Power Corporation) filed the referenced adversary complaint against the defendant New Hampshire towns of Seabrook, Hampton and Hampton Falls pursuant to 11 U.S.C. § 505 for determination of Great Bay's proper and lawful property tax liability to the Towns for the tax years 1990 through 1993 and to order the towns to refund or credit $5,829,358 to Great Bay Power Corporation for overpayment of property taxes for those years.[6]

The complaint contends that the towns overvalued and disproportionately assessed the debtor's property interest in the power station resulting in a gross overpayment in property taxes from 1990 through 1993. The Court first became aware of the Bondholders' Committee's intention to request a § 505 tax determination during the confirmation proceedings.[7] The defendant towns have filed a motion to dismiss or in the alternative to abstain from exercising jurisdiction over this adversary proceeding.

**6.** The Bondholders' Committee and Great Bay filed a motion for determination of property tax liability and refund and/or credit for overpayment of taxes pursuant to § 505 on December 30, 1994. (Ct.Doc. No. 750) During the hearings on the motion, the Court determined the matter should be determined in the context of an adversary proceeding. By order dated February 3, 1995, the motions and responses before the Court were stricken and the parties were directed to refile their pleadings in the format of an adversary proceeding. (Ct.Doc. No. 786) The complaint was deemed to be filed on December 30, 1994 the date the original § 505 motion was filed with the Court.

**7.** Section 6.13 of the Bondholders' Committee Fifth Amended Plan of Reorganization stated, "The Plan shall constitute the Committee's mo-

*DISCUSSION*

Section 505(a)(1) grants the bankruptcy court broad discretionary power to determine the tax liabilities, fines and penalties of a debtor. The provision reads as follows:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

11 U.S.C. § 505(a)(1). Section 505(a)(2) lists two limitations on this broad grant of power, one of which is applicable to this case. The two limitations are as follows:

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or

(B) any right of the estate to a *tax refund*, before the earlier of—

(i) 120 days after the trustee *properly requests* such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.

11 U.S.C. § 505(a)(2) (emphasis added). The plaintiff in this case is requesting the deter-

tion for a determination by the Bankruptcy Court that the assessed value of the Seabrook Property is substantially less than the value assessed by the relevant taxing authorities" and expressly reserved the right to withdraw the motion at its discretion. The Court is not persuaded by the contention that this provision binds the towns to consent to the bankruptcy court jurisdiction to determine the taxes. To arguably support this contention the provision at least would have to be specific enough so that it was clear that the failure to object to such a provision constituted an understanding and agreement to be bound by the bankruptcy court's determination of the amount of taxes due. This Court made no determination of its jurisdiction in this regard in confirming the plan.

mination of a *tax refund*[8] thus, § 505(a)(2)(B) applies.

*Section 505(a)(2)(B)*

■ The argument in this case centers around what Congress meant when it said the trustee must "properly request" a refund from the governmental unit from which the refund is claimed. The towns contend that a refund request is only properly made by the trustee when it is when it is done within the time limitations imposed by state law. In other words, the failure to "properly request" abatements from the defendant towns for the tax amount assessed within the two months required by New Hampshire state law effectively precludes the request to the bankruptcy court for a § 505 determination of the tax refunds under the statute.

The plaintiff counters that § 505(a)(2)(B)(i) governs only *when* the bankruptcy court may resolve tax disputes not *whether* it may do so. The plaintiff argues that a "proper" request is not necessarily a "timely" request and the state statutory time limitations to request a refund has no effect on the jurisdiction of the bankruptcy court to make a § 505 determination of the taxes due.

After review of the case law and the arguments of the parties, the Court will grant the motion to dismiss on the basis that this Court has no jurisdiction to consider and determine the question of a property tax refund where a trustee or a debtor-in-possession[9] did not request an abatement or refund with the applicable taxing agency within the time required by state law. *In re Cumberland Farms*, 175 B.R. 138 (Bankr.D.Mass.1994); *In re St. John's Nursing Home, Inc.*, 169 B.R. 795 (D.Mass.1994); *Matter of Qual Krom South, Inc.*, 119 B.R. 327 (Bankr. S.D.Fla.1990); *see also In re Millsaps*, 133 B.R. 547 (Bankr.M.D.Fla.1991) (because bankruptcy court is precluded from entertaining claim for refund by virtue of debtor's failure to satisfy state imposed conditions precedent to obtain a refund, it is unnecessary to determine whether the bankruptcy court has subject matter jurisdiction); *see also In re Graham*, 981 F.2d 1135 (10th Cir.1992) (trustee's filing of administrative claim for refund was nonwaivable jurisdictional prerequisite to bankruptcy court's determination of debtors' right to tax refund); *but see In re Ledgemere Land Corp.*, 135 B.R. 193 (Bankr.D.Mass.1991) (reasoning later vacated by *In re Cumberland Farms, supra*). In making its decision, the Court is particularly persuaded by the legislative history of § 505 and the bankruptcy court's historically limited jurisdiction to redetermine the estate's ability to obtain a refund for paid taxes. The legislative history of § 505 is thoroughly discussed in the reasoning and analysis of Judge Queenan in *Cumberland Farms* which this Court will hereby adopt.

In addition, the Court notes that the 1978 Bankruptcy Code was the first time the bankruptcy court was granted any power whatsoever to determine the legality of a *paid* tax claim. Until that point, the court had power to determine only *unpaid* tax liabilities. If Congress intended to significantly extend the bankruptcy court's jurisdiction to include the redetermination of *paid* taxes by preempting the state law time limitations, as the plaintiff suggests, it would have more clearly expressed its intent to do so. *See Greenwood Trust Co. v. Com. of Mass.*, 971 F.2d 818, 822 (1st Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 974, 122 L.Ed.2d 129 (1993) (general discussion of

---

8. The Court acknowledges that the plaintiff has requested a tax refund *or credit* in its prayer for relief. Although the Court focuses its discussion on a tax refund, the policy considerations are equally applicable to the request for a tax credit because the remedial action the town must take in the event of an adverse ruling would be essentially the same, i.e., absorbing the substantial tax loss involved over a period of time, either through tax credits or repayments of borrowings necessary to refund the taxes paid.

9. Section 1107(a) states:

Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

rules governing federal preemption of state law).

There are only two cases dealing specifically with tax *refunds* or *credits* which arguably support the plaintiff's interpretation of the statute[10]. The first, *In re AWB Associates, G.P.*, 144 B.R. 270 (Bankr.E.D.Pa.1992), supports the plaintiff's position only in result. In *AWB Associates*, the Court found it had jurisdiction to determine whether the debtor was entitled to refunds of unchallenged pre-bankruptcy tax payments to offset the court's determination of any unpaid tax amounts due and owing. Notably, although the court did find that federal law preempted state procedural requirements as to when a refund request must be filed, it did so with no meaningful discussion of the language of § 505(a)(2)(B)(i) or the historical divergent treatment under the Bankruptcy Code of 1978 regarding unpaid tax liability versus paid tax liability. *Id.* at 277–8. The Court also notes that all the cases cited as authority to preempt state procedural requirements for a refund request dealt with *unpaid* taxes. *Id.*

The second case, *In re Continental Airlines*, 149 B.R. 76 (D.Del.1993), *aff'd in part, revs'd in part* 8 F.3d 811 (3d Cir.1993) (table), *cert. denied* — U.S. —, 114 S.Ct. 1297, 127 L.Ed.2d 650 (1994), does support the plaintiff's position in terms of the analysis under § 505(a)(2)(B)(i) but the result is directly adverse to the plaintiff's claim for relief[11]. A close reading of the district court opinion reveals that although the district court held that the bankruptcy court's jurisdiction, to decide whether the estate was entitled to a refund under § 505(a)(2)(B)(i), was not dependent on the debtor's timely request for a refund in accordance with state law, the debtor's noncompliance with the state imposed time limit to file a refund request did preclude their request for a refund in the bankruptcy court[12]. *Id.* at 89. In other words, the § 505(a)(2)(B)(i) did not extend the time for the debtor to request a tax refund but rather granted the bankruptcy court jurisdiction to determine whether or not the debtor complied with the state time requirements. To understand this holding it is important to realize that the very issue presented in the case was when the 60 day time limit to request a refund began to run, because that determination established whether the debtor timely mailed its refund request, in compliance with the time limits of the state statute.

Thus, even if this Court were to follow the reasoning of the Third Circuit, which affirmed this portion of the decision of the district court, the *effect* upon this debtor would be the same[13]. Under *Continental*,

---

**10.** The plaintiff cited numerous cases which dealt with *unpaid* taxes later contested in bankruptcy court. However, the Court finds the reasoning in these cases inapplicable since this case deals specifically with a tax *refund* which is specifically addressed in the § 505(a)(2)(B) exception to the bankruptcy court's otherwise broad grant of authority to determine taxes under § 505(a)(2)(A). The Court believes that in this context, a request for a tax refund is synonymous with a tax credit. *See* footnote 5, *supra.*

**11.** The main issue in this case was the applicability of a brief lived exemption to the city of Denver's use tax to the debtor's operations at Stapleton International Airport in Denver, Colorado. The debtor had paid the use tax for the months of February, March and April then withheld it for the months of May, June and July. The matter arose in the bankruptcy court on a motion to pay administrative expenses filed by the City of Denver for the amounts withheld in May, June and July. The debtor opposed the motion and filed a cross motion for a refund or credit for the amount of taxes paid in February, March and April which they now claimed

were exempt. The complication to the § 505(a)(2)(B)(ii) timing issue, which was addressed for the first time in the district court, was that the dispute between the parties was whether or not the request for refund, which indisputably had been filed, was received by the taxing authority within the time specified by state law.

**12.** "Although the Court does not find their non-compliance with the statutory framework to create a jurisdictional bar to the Bankruptcy Court hearing and deciding this matter, the Court does conclude that the non-compliance by Continental with the provisions of the ordinance does act as a bar to any refund or credit. The requirements of the statute are explicit and Continental failed to comply with the procedural requirements in requesting a refund even if one were available to them under Ordinance No. 75." *Id.* at 89.

**13.** The unpublished Third Circuit opinion reversed the state law portion of the district court's ruling that held that the exemption did not apply to Continental operations at Stapleton and af-

the § 505(a)(2)(B)(i) bankruptcy court inquiry on the estate's entitlement to a tax refund begins with a determination of whether or not the taxpayer has met the state procedural and time requirements to qualify for consideration of a refund request. It is an undisputed fact in this case that no request for refund has ever been filed and the deadline for filing the request has past. This debtor has not "properly requested" a tax refund under state law and may not do so now under federal law.

### CONCLUSION

■ For the reasons set forth above, the Court holds that under § 505(a)(2)(B)(i), the debtor must timely comply with state procedural requirements to request a refund of taxes already paid to preserve the bankruptcy court's discretionary jurisdiction to decide whether a refund is owed. As the case law indicates, there are strong federal-state comity considerations to require that if a federal proceeding is to upset property tax revenues received by a local governmental entity that entity should have prompt notice of that fact to budget accordingly. While this strict reading of the § 505(a)(2)(B)(i) restriction may in some cases leave the creditors saddled with what might be inappropriate prebankruptcy inaction by debtor, that trade-off of competing policies was for Congress to balance and determine. I believe Congress did so by the specific language used in this statute.[14]

### ORDER

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire", dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

This matter is before the Court on defendants' motion to dismiss or alternatively abstain from exercising jurisdiction in this matter and the plaintiffs' objection thereto. On April 11, 1995, after legal briefing and argument of the parties, the Court took this adversary proceeding under submission to determine its jurisdiction under 11 U.S.C. § 505 to determine whether the bankruptcy estate is entitled to a refund for taxes paid during the years 1990, 1991, 1992 and 1993, or, if it has jurisdiction, whether it has power to order tax refunds notwithstanding failure to comply with state law time limits on requests for tax refunds by virtue of federal preemption. The Court answers both questions in the negative.

In accordance with the reasoning and conclusions of the Memorandum Opinion entered contemporaneously this date, which is hereby incorporated by reference, it is ORDERED as follows:

1. The defendants' motion to dismiss is hereby granted.

2. The alternative motion to abstain is moot.

DONE and ORDERED.

---

firmed the federal law portion of the district court ruling which held that the bankruptcy court had jurisdiction to determine whether the request for a tax refund was timely filed in accordance with state law. I presume the Third Circuit's logic behind its decision not to publish this opinion was that the only portion of the district court ruling which was reversed dealt with a state law which had since been repealed. Unfortunately, the only way to obtain that understanding is to in fact read the circuit court opinion. For that reason I concur with my sister court's concern with any appellate court's decision not to publish an opinion which even partially reverses a lower court's decision. *In re St. John's Nursing Home,* 169 B.R. at 802 n. 16.

**14.** In light of this ruling, the Court will not address the question of abstention. While the Court might normally address the abstention question as an alternate basis for decision, for reasons of judicial economy in the event of an appeal, it would not make sense to do so in the present case since it is uncontroverted that abstention would be met with a denial of tax refund relief by the Towns and in the state courts. Abstention has to do with refusal to exercise jurisdiction in favor of some other forum. I am not aware of any case in which a federal court has abstained from exercising jurisdiction where it was clear that no other relief was available.